266 So.2d 546 (1972)
EMPLOYERS OVERLOAD COMPANY
v.
EMPLOYERS OVERLOAD COMPANY OF NEW ORLEANS, INC., et al.
No. 5092.
Court of Appeal of Louisiana, Fourth Circuit.
September 6, 1972.
Rehearing Denied October 4, 1972.
Writ Refused November 16, 1972.
*547 Connolly, Nowalsky, Lambert & Labranche, John D. Lambert, Jr., New Orleans, for plaintiff-appellant.
McCloskey, Dennery & Page, J. William Vaudry, Jr., New Orleans, for defendants-appellees.
Before GULOTTA, STOULIG and BAILES, JJ.
STOULIG, Judge.
This is an appeal from a partial denial of a preliminary injunction. Appellant, Employers Overload Company, a Minnesota franchiser, sought to enjoin appellees, Employers Overload Company of New Orleans, Inc.; its successor company, A-1 Temporary Help Services Co., Inc.; Jeffrey McKennis; and Mrs. Lillian Lee Deslattes and Nell Lee Cromiller, partners in A-1 Employment Service, from conducting any temporary help business. As basis for the injunction, appellant urged certain restraint of competition clauses in the franchise contracts between the parties.
Upon application by the plaintiff, the trial court granted a temporary restraining order as follows:
"* * * [D]efendants * * * are hereby * * * prohibited from using either directly or indirectly, and the South Central Bell Telephone Company is hereby prohibited * * * from granting to the above defendants, either directly or indirectly, the use of the name, `Employers Overload Company', singularly or in connection with any other language referring to such name, or its listing in a telephone directory or in a response to a request for directory assistance seeking information concerning said company * * *."
It further ordered the South Central Bell Telephone Company to give to Employers Overload Company of Minnesota, complete and exclusive use of all telephone listings in the name of "Employers Overload Company," and to direct any inquiry regarding said company to the Minnesota Corporation.
After considering 282 pages of deposition testimony, 90 exhibits, and 848 pages of testimony taken during the seven days of the hearing, the trial court perpetuated the above temporary restraining order in the form of a preliminary injunction, but in all other respects denied appellant's request. It is from this denial that Employers Overload Company appeals.
There is a significant difference between the rendition of a judgment on a preliminary injunction and the deciding of the case on its merits (permanent injunction). The preliminary injunction is only an interlocutory procedure, usually conservatory in nature, which has the object and purpose of maintaining or adjusting the existing status of the litigants upon a prima facie showing that to do otherwise would result in irreparable injury, pending the decision on the permanent injunction, which is dispositive of the issues on the merits.[1]
The jurisprudential distinction between a preliminary injunction and a permanent injunction is succinctly stated in West Publishing Co. v. Intrastate Pipeline Corp., 254 So.2d 643, 647 (La.App. 4th Cir. 1971, writ refused, 1972), where the court observed:
"One of the essential differences between a preliminary injunction and a permanent injunction, in addition to different delays, pleadings and types of admissible *548 evidence, is that the former is interlocutory in nature and designed to preserve the status quo until a determination can be made on the merits of the controversy. Consequently, a preliminary injunction may issue merely on a prima facie showing by the plaintiff that he is entitled to the relief sought and that he would suffer irreparable injury if the same is not granted, while a permanent injunction requires a preponderance of the evidence to support its issuance. Melancon v. Assumption Parish Police Jury, La.App., 231 So.2d 690; Cloud v. Dyess, La.App., 172 So.2d 528; Baton Rouge Cigarette Service v. Bloomenstiel, La.App., 88 So.2d 742."
To achieve the object of a preliminary injunction, the trial court may issue such orders as may be necessary to prevent irreparable damage to either party which would be occasioned in the interim. We find this is the result effected by the trial court's decree.
The arguments of appellant are as follows: (1) the positive defense testimony of an alleged imposter should be disregarded; (2) there was a breach of contract; (3) their good faith was not successfully challenged; (4) their investment in developing the franchise is sufficient consideration to enforce the contract terms; and (5) LSA-R.S. 23:921, generally forbidding contracts against engaging in a competing business, is applicable. These are contentions which address themselves to the merits of the controversy and, as indicated above, in the absence of a prima facie showing that irreparable injury will result from their nonrecognition, they are not the proper subject matter of a preliminary injunction.
Though the trial judge, in his reasons for judgment, made reference to the general principles of law relative to interpretation and motivation governing contracts in the restraint of trade, as outlined in the case of Desselle v. Petrossi, 207 So.2d 190 (La.App. 4th Cir. 1968), we construe his refusal to grant a preliminary injunction enjoining the defendants from engaging in a competitive business, as a finding that appellant has failed to establish a prima facie case that it is entitled to this relief, or that its denial will result in irreparable injury. Otherwise the preliminary injunction would have had to issue as a matter of right.[2]
The Supreme Court in City of Lake Charles v. Lake Charles Ry., L. & W. Co., 144 La. 217, 80 So. 260 (1918), declared at page 261:
"* * * An irreparable injury is one for which the party injured cannot be compensated adequately in damages, or for which the damages cannot be measured by a pecuniary standard."
Liquidated damage clauses in contracts are intended to provide adequate compensation as measured by the parties' own standards. The jurisprudence contains numerous examples of refusal by the courts to apply injunctive relief where such damage agreements provide adequate protection of the parties.[3]
It is clear from the franchise agreement that irreparable injury will not result. That document clearly provides for liquidated damages for a period of two years,[4] during which appellant would have ample opportunity to obtain injunctive relief, should such action be warranted. Furthermore, appellant has the right to recover *549 all profits earned by the franchisee for two years from the date of breach of the agreement, which corresponds with the maximum term permitted by LSA-R.S. 23:921, for contracts in restraint of competition, thereby affording adequate protection against any loss of income from the competitive activities of appellees.
This court in the case of National School Studios, Inc. v. Barrios, 236 So.2d 309 (1970), enunciated an exception in the situation where the "liquidated damages" provision is not for a fixed or otherwise certain sum, but for a sum determinable by application of variable factors to a formula or other unknowns within the defendant's control to the extent of being subject to easy manipulation. This exception is clearly not applicable to the instant case where the contract provides for liquidated damages of all "profits" of the defendant, which amount would be clearly ascertainable from the company's business records and income tax returns.
The trial court's order did protect appellant's property rights to exclusive use of its name and telephone numbers and directory assistance referral. Furthermore, the secretary and controller of Employers Overload Company admitted the corporation had in its possession through invoices the complete list of the New Orleans accounts through January 1, 1971. Obviously appellant considered this a satisfactory disclosure of this information since in the petition it did not seek a return of such information from appellees, nor urge as a specification of error on appeal the court's failure to order its return by appellees.
Additionally, appellant urges that the trial court should have maintained its motion for summary judgment and/or motion for relief and held defendant McKennis in contempt under LSA-C.C.P. arts. 1512 and 1513, because of his refusal to answer certain deposition questions after being ordered to do so. This issue is not properly before us since the relief authorized under LSA-C.C.P. arts. 1512 and 1513 is contingent upon the filing of the written motion to compel deponent to answer interrogatories (LSA-C.C.P. art. 1511), which motion was not filed until after the taking of the appeal, and which to our knowledge is still pending. Furthermore, the provisions of these articles clearly indicate their application rests within the discretion of the trial judge which will not be disturbed absent its abuse.
For the foregoing reasons, the judgment of the trial court is affirmed, all costs to be born by appellant.
Affirmed.
NOTES
[1] Palama v. Livaudais, 179 La. 201, 153 So. 691 (1934); West Publishing Co. v. Intrastate Pipeline Corp., 254 So.2d 643 (La.App. 4th Cir. 1971, writ refused, 1972).
[2] LSA-C.C.P. art. 3601 reads in part:

"An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result * * *."
West Publishing Co. v. Intrastate Pipeline Corp., supra.
[3] National School Studios, Inc. v. Barrios, 236 So.2d 309 (La.App. 4th Cir. 1970).
[4] "Grantee agrees that Grantor shall have the right in addition to injunctive remedy: to recover profits earned by Grantee for a period of two (2) years if this franchise agreement is breached or violated * * *."