SCHOTT, Judge.
These injunction proceedings arose out of changes made by the Jefferson Parish Council in a drainage project affecting property owned by plaintiffs on the west bank of Jefferson Parish. From a judgment denying a preliminary injunction plaintiffs applied for supervisory writs and also took an appeal. We granted a writ of certiorari because it appeared that defendants were about to spend funds derived from a bond issue for purposes inconsistent with those publicly announced when the election authorizing the issue was conducted. We also granted an expedited appeal in the matter, and with the arrival of the transcript and record on appeal the two matters were consolidated.
Plaintiffs’ land is bounded generally on the west and south by Bayou des Families and Barataría Boulevard, on the east by the Gulf Intercoastal Waterway and on the north by a V-shaped levee. Located within the area is Bayou Aux Carpes, which runs from the Gulf Intercoastal Waterway in a northwesterly direction toward the V-shaped levee. Also located on the south between the end of Bayou des Families and the beginning of the Gulf Intercoastal Waterway is Bayou Barataría. The land is a marshy area or wetlands subject to tidal overflow from the south.
*299 On August 15, 1963, the Jefferson Parish Council adopted Resolution No. 5515 approving of a flood control project proposed for the area by the United States Army Engineers. Under this resolution the Council agreed to provide rights of way for new levees and to construct a pumping station at the mouth of Bayou Aux Carpes. The project involved the construction of new levees as well as the raising of the V-shaped levee on the north. Dams and dikes were to be placed at the mouth of Bayou Aux Carpes and at Bayou des Families. With the installation of the pumping station at the mouth of Bayou Aux Carpes the land would be drained and reclaimed for residential and industrial development. The project was to be financed with $1,000,000 of federal funds and $3,600,000 from a bond issue of Jefferson Parish Consolidated Drainage District No. 1.
On April 29, 1967, the bond issue was passed by the voters of the drainage district. On May 1, 1969, a servitude was granted by plaintiffs to the parish for constructing, maintaining and operating levees and drainage ditches involved in the project. In 1971 construction started and in 1973 Phase 1 of the project was completed. This included construction of levees and placement of the dams and dikes at the mouth of Bayou Aux Carpes and at Bayou des Families. By the end of 1974 Phase 2 which would involve primarily construction of the pumping station was to begin, but in November, 1974, the project was halted because of objections from a number of environmental groups. The Corps of Engineers then conducted a public hearing as required by § 404 of the Federal Water Pollution Control Act of 1972 (FWPCA), 33 U.S.C.A. 1344, and in March, 1975, a statement of findings was issued by the District Engineer in which he concluded that public interests would be best served by construction of the project. But the Corps of Engineers continued to encounter opposition from the Environmental Protection Agency of the United States. In October, 1975, the Corps, again requesting EPA approval for the project, concluded that then prevailing considerations might prevent the project from being completed if it were just beginning but insisted, in view of the fact that the project was approved in 1964 and was about 80% complete, it was reasonable to go ahead with the project. On March 31, 1976, EPA made a report, expressing a number of concerns adverse to the project. After much additional study, revised findings of fact were issued by the Corps on June 30, 1976. Once again the project was recommended as being in the public’s best interest.
At this point the Corps had received threats of a lawsuit by various environmental groups and warnings that the EPA would exercise its right to veto the project under § 404(c) of the FWPCA. Accordingly, on August 27, 1976, the Corps officially notified EPA that it would resume construction on the project within 15 days unless EPA exercised its veto in the meantime. On September 10 EPA responded as follows:
“I am in receipt of your letter of 27 August 1976 regarding the Harvey Canal-Bayou Barataría Levee project, Louisiana. Because of the involvement of EPA’s Dallas office, I have asked the Dallas Regional Administrator to assist me in preparing a response to your letter. “As you are aware, EPA is gravely concerned over the environmental impacts that are likely to result from granting this permit. Because of these continuing concerns, and the time necessary to prepare EPA’s response, we will not be able to provide you with our detailed response within the time frame you requested. “We ask, therefore,' that the Corps take no action regarding the resumption of construction by Jefferson Parish until we have completed our review.”
On October 7, 1976, at a meeting held among representatives of EPA, the Corps, Congress, Jefferson Parish and environmental organizations, a spokesman for some of the environmental groups stated that they would be satisfied if the plan were revised to the extent that pumping station would be eliminated from the plan and the dams and dikes at Bayou des Families and Bayou Aux Carpes would be replaced with flood *300 gates which would remain open except in time of hurricane, with the result that the land of plaintiffs would be maintained as wetlands and would not be drained. At the same time the same environmental groups had been obstructing the completion of a highway between Lafitte and LaRose, and they offered to compromise both of these disputes by withdrawing their opposition to the highway project in return for the Parish abandoning the Bayou Aux Carpes pumping station and adopting the flood gates plan. The members of the Parish Council indicated a willingness to go along with this compromise, but wanted the Corps to come forward first with a directive withdrawing approval of the project which they would follow up with a resolution abandoning the pumping station project and converting to the flood gates project.
On October 14, 1976, the Ecology Center of Louisiana, Inc. directed a letter to the Corps of Engineers and to the President of the Jefferson Parish Council confirming his understanding of agreements made at that October 7 meeting substantially the same as outlined above.
On November 16,1976, the Corps issued a revised statement of findings in which it noted EPA’s continuing objections to the project as originally designed and concluded that flood control could be accomplished by completion of the dikes along Bayou Bara-taría, removal of the dikes closing Bayou Aux Carpes and Bayou des Families, replacement of the dikes with movable flood gates and elimination of the pumping station, so as to restore and maintain normal water flows in the area.
On April 14, 1977, this suit was filed alleging the foregoing facts as well as the following: At the October 7 meeting Jefferson Parish Councilmen Giardina, Lawson and Miller were advised by General Wilson of the Corps of Engineers that they would continue to support completion of the project, as originally conceived, despite objections by EPA and the environmentalist groups, but on that afternoon General Wilson was advised by Giardina that the Council would go along with the proposed compromise offered by the environmentalists. On the same day at another meeting between Giardina, the Parish attorney and General Wilson, the Parish officials expressed fear that entrance into the compromise would subject the Parish to legal action so, in order to insulate the Parish, they requested that the Corps initiate the action to abandon the original project. A further contact was had between General Wilson and Parish President, Douglas Allen, in which the latter assured Wilson that if the Corps abandoned the pumping station there would be no political repercussions from the Parish. Since Resolution No. 5515 authorizing the project in August, 1963, had never been rescinded but, on the contrary, was reaffirmed on four occasions, this action of the Parish officials was unauthorized.
Plaintiffs alleged further: The defendants continued to disregard Resolution No. 5515 and the successive resolutions by 1) meeting with representatives of the Corps on March 23, 1977, in order to implement the order of November 16; 2) considering an application for a permit to explore for gas in Bayou Aux Carpes, which permit, if granted, would require the removal of the dams and dikes at Bayou Aux Carpes and the dredging of the bayou, and 3) entering into a compromise agreement to settle pending litigation over the construction of the Lafitte-LaRose Highway.
Plaintiffs prayed for a temporary restraining order and a preliminary injunction against defendants prohibiting them from expending any of the bond issue funds for purposes not specifically authorized thereby, expending any other parish funds without authority and contrary to Resolution No. 5515, entering into an agreement to compromise the Lafitte-LaRose Highway project suit on the basis of abandoning the pumping station at Bayou Aux Carpes or removal of the dams and dikes at Bayou Aux Carpes, issuing a permit for gas exploration which would entail the removal of the dams and dikes, taking any action which would purport to use the lands covered by the right of way agreement between plaintiffs and the defendants for purposes *301 other than completion of the project and construction of the pumping station as originally authorized and taking any action to implement the order of November 16.
On May 3, 1977, plaintiffs filed a supplemental and amending petition in which they alleged that defendants had passed a resolution on April 21 authorizing abandonment of the pumping station at Bayou Aux Carpes and letting a contract out to engineers for the design of the flood gates to be built in lieu of the dam and pumping station as theretofore planned. They now alleged that this new resolution, as an attempt to revoke and rescind the earlier resolution, was a divestiture of contractual rights in violation of the Constitutions of the United States and the State of Louisiana, and the taking of property without just compensation. In addition to the relief they sought in the original petition, plaintiffs now sought a temporary restraining order and injunction against defendants to prohibit them from implementing this new resolution.
The case went to trial strictly on a rule for a preliminary injunction. Defendants were asked to stipulate that the merits of the permanent injunction be tried simultaneously but they specifically declined to make this stipulation. Thus, the judgment appealed from is not a judgment on the merits but only a judgment dismissing a rule for preliminary injunction.
In Employer’s Overload Co. v. Employer's Overload Co., N.O., 266 So.2d 546 (La.App. 4th Cir. 1972) writ refused, 263 La. 375, 268 So.2d 260, this court discussed the difference between a judgment on a preliminary injunction and one on the merits, i. e., for a permanent injunction. The preliminary injunction is interlocutory and conservatory in nature. Its purpose is to maintain the status quo between the litigants on a prima facie showing that to do otherwise would cause irreparable injury pending a decision on the permanent injunction which would dispose of the issues with finality. The preliminary injunction may issue on a prima facie showing whereas a permanent injunction requires a preponderance of the evidence to support its issuance. See also, West Publishing Co. v. Intrastate Pipeline Corp., 254 So.2d 643 (La. App. 4th Cir. 1971), Picard v. Choplin, 306 So.2d 918 (La.App. 3rd Cir. 1975).
In declining to issue a preliminary injunction the trial judge gave extensive written reasons for his action, and we perceive that because he did not consider the above stated difference between the trial of a preliminary injunction application and that of the merits of the permanent injunction, he erred in his judgment.
The record clearly shows that the pumping station project had generated serious and determined opposition from a number of environmental groups who successfully gained the support of the Environmental Protection Agency of the United States. The last official action taken by the EPA before the meeting of October 7 and those events which led to the issuance of the November 16 order by the Corps of Engineers was the letter quoted in full in this opinion which left open the possibility of a veto of the project by the EPA. Nevertheless, General Wilson testified that the Corps would have fought to complete the pumping station over the objections of EPA and the environmentalists had the Parish continued on this course, and there is a clear inference that the reversal of the decision by the Corps was the result of the decision by the Parish officials to abandon the project notwithstanding the fact that Resolution No. 5515 and the four successive resolutions of the Parish Council calling for completion of the project was still the official position of the Parish.
The Parish President, Douglas Allen, who participated in the decision making process which eventually indicated a willingness on the part of the Parish to abandon project as originally envisioned was undoubtedly convinced in his own mind that the pumping station could never be built. He testified about other experiences the Parish had when other projects had been started at great expense to the Parish and were subsequently halted because of opposition from environmentalists. Thus, he felt that the *302 conversion of the project from the pumping station to the flood gates concept was the only practical solution.
Even General Wilson, who was willing to fight for the project admitted that a threatened suit in Washington by a Washington law firm in behalf of the environmentalists would probably be lost by the Corps and the Parish because of past experiences he had in the Washington courts.
There are references in the pleadings and briefs to a suit filed by plaintiffs in the federal district court here in which they are attacking the validity of the Corps’ order of November 16, and while we are not officially aware of the status of that suit, counsel for plaintiffs in oral argument stated that the federal case is being held in abeyance pending the outcome of these proceedings.
From the foregoing, we are concerned that there are many issues involved which were not disposed of at the trial of the rule but which can only be adequately dealt with at the trial on the merits.
Another such issue emerging from the record is the effect of the agreement if any which was made for the Parish officials to trade off their support for the pumping station project in exchange for the environmentalists abandoning their opposition to the Lafitte-LaRose Highway project. The record does not show the extent to which the latter project has progressed, but it may be that governmental priorities and benefits involved will require ultimate enforcement of the compromise agreement.
The record of the trial on the preliminary injunction does not show the extent of benefit from the flood control project as it now stands if the project is not completed. There were two distinctive features of this project, 1) a flood control project as such, and 2) a land reclamation project. The latter aspect is lost unless the pumping station is completed. On the other hand, the construction of the levees and the raising of the V-shaped levee seem to afford some flood protection to individuals in the area even if nothing further is done on the project.
We have concluded that plaintiffs made out a prima facie case for the proposition that this project would never have been started had it not been for the pumping station feature because the cost of the project was justified by the benefits to be derived from land reclamation. Without the latter its cost as a pure flood control project with the flood gates outweighed its benefits. Thus, plaintiffs may suffer irreparable harm as citizens and taxpayers if the project as originally conceived is not completed considering the amount of money already spent on the project. A trial on the merits may dispose of this issue adverse to plaintiffs considering all of the other circumstances of the case, but in the meantime plaintiffs are entitled to a preliminary injunction to preserve the status quo.
We have also concluded that plaintiffs made out a prima facie case to show that they might suffer irreparable injury as taxpayers in that defendants are now in the process of expending bond issue funds for a purpose which was not contemplated in the original call and the public notices given in connection therewith. The trial court concluded that the construction of the pumping station at Bayou Aux Carpes was only a small part of the complex bond issue and was not of sufficient consequence to warrant the issuance of a preliminary injunction on this basis, but we disagree. Plaintiffs presented evidence to show that this pumping station was of sufficient import to the people in the drainage district that some would not have voted for the bond issue except for that feature. This evidence surely supports the conclusion that defendants should not spend these funds on something other than the pumping station project pending a trial on the merits. To hold otherwise would permit the defendants to dissipate these funds and make this part of the case moot by the time of the trial on the merits.
Finally, plaintiffs have made out a prima facie case that as citizens of the Parish they are entitled to a preliminary injunction preventing Parish officials from taking action which is contrary to official positions previously taken by them. As recently as June, *303 1976, the Parish Council had reiterated its support for the project in a formal resolution. This followed a meeting at which proponents and opponents had been heard by the Council. This occurred just after several new councilmen took office and the purpose of the hearing was to determine if the project still had the Council’s support. It may be that a trial on the merits will demonstrate that the actions of the councilmen in disregarding these formal resolutions were fully justified, but until the merits are tried plaintiffs are entitled to have the status quo maintained, i. e., to prevent defendants from abandoning the project in the meantime.
Finally, it may be that a trial on the merits would lead to the conclusion that plaintiffs are not entitled to a permanent injunction because they can be adequately compensated with damages in the event that they prevail. Plaintiffs included in their prayer for relief on the merits a plea for damages as an alternative to injunctive relief. But this does not detract from plaintiffs’ right to a preliminary injunction at this time.
Accordingly, the judgment appealed from is reversed and set aside to the extent that plaintiffs’ rule for a preliminary injunction against defendants is made absolute, enjoining and prohibiting them from expending any of the funds which originated from the bond issue election conducted by the Parish of Jefferson and Consolidated Drainage District No. 1 on April 29,1967, for any purpose other than that included within the original project, including the construction of a pumping station at Bayou Aux Carpes, and enjoining and prohibiting defendants from abandoning the project as authorized by Resolution No. 5515 of August 15, 1963, and by such bond issue.
The case is remanded to the trial court for the purpose of fixing a bond to be furnished by plaintiffs as a prerequisite to the issuance of this preliminary injunction in accordance with law and for further proceedings consistent with the views we have expressed. The costs of this appeal are assessed against defendants and the other costs are to await the outcome of the trial on the merits.
WRIT MADE PEREMPTORY, REVERSED AND REMANDED.