GULOTTA, Judge.
Plaintiff, a member of the Horsemen’s Benevolent and Protective Association (HBPA), appeals from a judgment dismissing her suit for injunctive relief to prohibit the construction of an office building for the HBPA with funds mandated for use as medical benefits and administrative costs and expenses.
It is plaintiffs contention that the trial judge erroneously dismissed her suit on the merits absent a stipulation at the hearing on the preliminary injunction that the matter would be heard on the preliminary injunction and the merits at the same time. She further argues that the expenditure of $625,000.00 for the construction of an office building for the HBPA with funds mandated for use as medical benefits and administrative expenses and other costs necessary to provide such benefits is contrary to LSA-R.S. 4:183.[1]
The matter is before us on a stipulation of facts. The record does not contain any written stipulation that the matter would be heard on the merits, and the plaintiff claims none exists. Defendant, however, claims both parties agreed, in chambers, that the issue was primarily one of law and the preliminary and permanent injunction would be tried together. In addition the trial judge in his judgment stated “the case was tried on its merits.”
A preliminary injunction is an interlocutory procedure to maintain or adjust the existing status of the litigants upon a prima facie showing that to do otherwise would result in irreparable injury,[2] pending the decision on the permanent injunction, which is dispositive of the issues on the merits.[3]
Generally, a trial court, in denying a preliminary injunction, cannot, absent a stipulation, dismiss the suit on the merits *280 for a permanent injunction without a trial on the merits.[4] In State ex rel. Guste v. City of New Orleans, 363 So.2d 678 (La.1978), however, even with a stipulation in the record, the conduct of the parties indicated the matter was heard on the merits by agreement. In Guste, even though the hearing was designated as one on the application for a preliminary injunction, the entire case was submitted to the trial judge and both parties briefed and argued the entire matter at the hearing on the rule to show cause. The trial court’s reasons for judgment dealt extensively with the merits of the case, and only tangentially with the issuance of a preliminary injunction. The State then sought appellate review only of the decision on the merits. At the appellate level, the parties entered into a stipulation that the issue involved statutory interpretation. In Guste, the Supreme Court held these factors demonstrated the parties understood all issues would be decided on the merits at the hearing.
The Guste opinion is silent as to whether one of the parties objected to the existence of such a stipulation. However, in the writ application in Guste, the relator argued that only the propriety of a preliminary injunction was before the trial court and not the merits of the declaratory relief and the permanent injunction. The appellant in Guste further argued in its brief that the trial court was unauthorized to adjudicate the merits when only a request for a preliminary injunction had been heard. Likewise, in our case the appellant argues that there was no stipulation; that the trial judge did not have the matter on the merits before him; and, that he erroneously dismissed plaintiffs suit.
The issue in our case on the preliminary injunction was clearly to maintain the status quo to prevent construction of the building. The issue on the merits is whether HBPA is in violation of statutory authority, if indeed the building is constructed. The two issues are so closely interwoven that it is difficult to understand, if we accept plaintiffs claim, why there was no stipulation to decide the case on its merits. Apparently the trial judge and the defendant were of the impression that there was such a stipulation. We note also that the stipulation of facts relates not only to the preliminary injunction but to the issues on the merits. Finally, we fail to find any prejudice to plaintiff by a submission of the case on both the preliminary and permanent injunctions. Under the circumstances, we cannot say the trial judge erred in rendering a judgment on the merits.
Because the judgment on the merits is a final judgment,[5] we do not conclude the appeal taken on the sixteenth day after rendition of judgment was untimely, as claimed by HBPA. Since the judgment in this case was not only from a denial of a preliminary injunction but from a dismissal of plaintiffs suit on the merits, the delays for appeal set forth in LSA-C.C.P. Art. 2087 [6] and Art. 2123[7] apply, not the fifteen day appeal period of LSA-C.C.P. Art. 3612[8] for orders relating to preliminary injunctions. See Calhoun v. State, 152 So.2d 866 (La.App. 3rd Cir.1963).
Finally, we find no merit to plaintiffs contention that the expenditures for land and improvements for an office building by HBPA violate LSA-R.S. 4:183. We adopt in toto the well considered and well *281 articulated reasons of the trial judge for denying plaintiff injunctive relief. Those reasons are set forth in pertinent part as follows:
“The pertinent facts of the case are stipulated to; the only remaining issue involves the interpretation of certain language in R.S. 4:183. One provision of that statute requires that one-half of the 50% parimutual handles received by the HBPA be allocated solely for the use and benefit of the members as medical and hospital benefits, including the administrative expenses and other costs necessary to provide said benefits. It is under this provision that the HBPA undertook to purchase the land and to incur the services of and expenses of architects, etc., to draft plans for the construction of a building which will be almost exclusively used in the administration and processing medical benefits claims.
“The plaintiff argues that an expenditure of this magnitude, approximating three-quarters of a million dollars, for the purpose of acquiring land and construction of a building thereon cannot be categorized as an ‘administrative expense’, nor can it be considered as ‘other costs necessary to provide said benefits’, as those terms are used in the above mentioned statute. In support of her contentions (interpretation) the plaintiff cites Black’s Law Dictionary and Webster’s Third New International Dictionary definitions, defining or limiting to the word ‘administrative’ to daily affairs as distinguished from permanent matters — or finding the term ‘administrative’ to be synonymous with ‘management’. Further, the plaintiff cites numerous definitions of the word ‘necessary’ to show that the HBPA’s expenditures in this case are not within the scope of ‘other costs necessary’ under the statute. In this aspect of her case, the plaintiff insists that the new building is not necessary, not essential, not indispensable, not required, or not within the meaning or definition of any other term used as a synonym to the word ‘necessary’.
“In opposition the defendant points out any number of compeling reasons why the building is, in fact, necessary for the continued operation of the program and why the expenditures would be allowed under R.S. 4:183. Currently, the HBPA Medical Benefit Program is administered from a 14' by 64' house trailer. There is a severe lack of space for the present employees to work in, for equipment files, office supplies, etc. The HBPA has been forced to rent self-service storage bins or facilities away from the house trailer wherein files, etc., are stored. Employees needing these files have to spend time and effort traveling to the storage bins, fishing out the needed file and returning it to the cramped and crowded house trailer which already has large numbers of files stored in temporary cardboard box files scattered hither and yon in the trailer. Every available space in the trailer is taxed to capacity; stationery and supplies are stored in the bathroom; the kitchen area is used as an office. The trailer has been broken into, burglarized three times, necessitating installation of burglar bars on windows, etc. This, in turn, creates a dangerous fire hazard as the trailer is reduced to only one exit and it is constructed primarily of flammable materials. Additional employees are needed to handle the work load, but have not been hired simply because there is absolutely no place for them to work or locate. There is no adequate reception area; claimants and others are required to walk among and mingle with employees and have ready access to open files which can and do contain confidential information.
“The operation is not a trivial nor small one. More than 20,000 Owners, Trainers, Assistant Trainers, plus their spouses and children are covered by the program: 7301 Owners and Trainers, their soouses and children; 166 Assistant Trainers; 2028 grooms and hot-walkers; 633 exercise boys, etc. In short, there are 20,000 participants in the program at present and their numbers is continuously growing. In 1980 $496,518 in benefits were paid out; in 1981 $724,248 and in the first five months of 1982 $346,648....
*282 “Working space and conditions are inadequate and lead to inefficiency and the slow processing of claims for medical benefits. All of this makes a new facility, a larger facility, necessary and virtually essential.
“The defendant’s Louisiana Corporate Charter authorizes the HBPA to own, buy, sell, etc., real estate. The statute in question uses two terms; ‘administrative expenses’ and ‘other costs necessary to provide said benefits’. Clearly the Legislature meant to indicate that ‘other costs necessary’ are distinct and different from ‘administrative expenses’. Further, in order to give both terms efficacy and meaning it is necessary that ‘administrative expenses’ be interpreted as recurring, management expenses, as suggested by the plaintiff. However, the term ‘other costs necessary’ must be interpreted as different from administrative expenses and as one-time non-recurring outlays of capital.
“The terms of the statute here at issue have not been refined or explained by the Legislature, nor have the Courts heretofore been called upon to do so. It is a recognized rule of statutory construction that an Act be read as a whole and is to be interpreted so that no clause, sentence, nor word shall be considered as superfluous nor meaningless, if that result can be avoided. CHF Finance Co. v. Jochum [241 La. 155], 127 So.2d 534. This Court gives meaning and effect to all terms used in this statute and concludes that the expenditure at issue are embodied within the meaning of ‘other costs necessary’, as well as within the meaning of the term ‘administrative expenses’.
“The defendants present a compelling need to construct a building for the adequate administration of the medical benefit program. The language of the statute is construed to permit and to allow these expenditures as both administrative in part and as other necessary costs to effectively carry out the intent and purpose of the statute. The severe absence of working space, the inability to expand existing facilities to meet the ever increasing work load, the inadequate working conditions, and the inefficiency produced thereby, interfere with and slow down the administration of the medical benefits program. All these things make a new administration facility, a larger facility, necessary and essential.
“The real issue is not: Does the HBPA need a new facility? Rather, the issue is: Does it need the facility it plans to build? The Board of Directors appear to be acting prudently in the premises, with foresight and certainly with good discretion. They are planning a facility which is not only needed and meets the present requirements, but, additionally, provides for growth and future development (something many organizations and companies often fail to do.) A $600,000 building newly constructed in New Orleans in 1982 cannot be considered a magnificent edi-face. With respect for her, the plaintiff wishes to substitute her ideas as to what should be acquired as the new facility for those of the chosen Board of Directors. It is the latter who are charged with the responsibility and given the duty to administer and manage the affairs of the HBPA, and the Court cannot find any abuse in the exercise of their duties or discretion.”
Having adopted the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED.

. LSA-R.S. 4:183 provides in pertinent part: “The monies distributed to the horsemen for purses and the monies distributed to the Horsemen’s Benevolent and Protective Association for the use and benefit of horsemen for hospital and medical benefits and for the administrative expenses in providing said benefits shall amount to the following: .... one and one-half percent of said commissions to the Horsemen’s Benevolent and Protective Association for the use and benefit of the horsemen as medical and hospital benefits, including the administrative expenses, and other costs necessary to provide said benefits ...”

. LSA-C.C.P. Art. 3601 provides in pertinent part:
“An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, ...”

.See Schwegmann Bros. G.S. Mkts. v. Louisiana Milk Com’n., 290 So.2d 312 (La.1974); Creppel v. Parish of Jefferson, 352 So.2d 297 (La.App. 4th Cir. 1977), writ denied 354 So.2d 201 (La.1978); Employers Overload Company v. Employers Overload Company of New Orleans, Inc., 266 So.2d 546 (La.App. 4th Cir. 1972), writ denied 263 La. 375, 268 So.2d 260 (1972); West Publishing Co. v. Intrastate Pipeline Corp., 254 So.2d 643 (La.App. 4th Cir. 1971), writ denied 260 La. 405, 256 So.2d 290 (1972).

. See Southwest Sales and Manufacturing Company, Inc. v. Delta Express, Inc., 342 So.2d 281 (La.App. 3rd Cir. 1977); Olsen v. City of Baton Rouge, 247 So.2d 889 (La.App. 1st Cir. 1971), writ denied 259 La. 755, 252 So.2d 454 (1971); Pizzitola v. Pace, 161 So.2d 441 (La. App. 4th Cir. 1964).

. See State ex rel. Guste v. City of New Orleans, supra; Southwest Sales and Manufacturing Company, Inc. v. Delta Express, Inc., supra.

. La.C.C.P. Art. 2087 provides for a sixty-day devolutive appeal period.

. La.C.C.P. Art. 2123 provides for a thirty-day suspensive appeal period.

. La.C.C.P. Art. 3612 provides in pertinent part:
“An appeal from an order or judgment relating to a preliminary injunction must be taken and a bond furnished within fifteen days from the date of the order or judgment.”