DANIEL L. DYSART, Judge.
|, Defendant-appellant, the French Market Vendors Association (the “Association”),[1] appeals the trial court’s denial of a preliminary and permanent injunction and denial of a motion for summary judgment. For the reasons that follow, we affirm the trial court’s denial of the applications for preliminary and permanent injunctions and dismiss the remainder of the appeal.
FACTUAL BACKGROUND
On March 12, 2012, the Association filed a Petition against the French Market Corporation (the “FMC”)[2] and the City of New Orleans (the “City”), which makes the following allegations. On February 28, 2012, the FMC adopted new rules and regulations “as set forth in the French Market Vendor Policy Manual as ‘updated.’ ” The new vendor policy manual (the “updated Manual”), which went into effect on March 1, 2012, amends existing rules and regulations so as to (1) increase the rental days required to maintain tenure, (2) reduce the “annual leave” |2of tenured vendors, (3) require vendors to “personally sign in to maintain tenure (when formerly, a tenant was permitted to do so), (4) dispense with “prior rental credits should a vendor be unable to appear,” and (5) -require vendors to wear identification *517 badges.[3] In addition, the updated Manual reserves to the FMC the right “upon adequate notice to all Vendors and a vote of the Board of Directors to review the tenure system” and the Board of Directors is to annually “issue a statement indicating if it will continue the use of the tenure system.”
According to the Petition, “Ordinance No. 4745 M.C.S.” authorized the Mayor to enter into a lease with the FMC “for a period of 40 years from January 1, 1972” and that the term under a “Lease and Franchise Agreement” ended on December 31, 2011. The Petition then alleges that “there occurred no extension or renewal of’ the “franchise and lease agreement.” At oral argument, counsel for the Association conceded that the lease had, in fact, been renewed and moved to strike these allegations.[4]
The Association next alleges that the amendments to the original Vendor Policy Manual amount to “regulations” and in adopting these “regulations,” the FMC failed to follow the procedures set forth in the Home Rule Charter (the “Charter”) for the City of New Orleans. Likewise, the Association maintains that the effective date adopted by the FMC for the updated Manual is inconsistent with that provided by the Charter and the New Orleans City Code (the “City Code”).
IsFinally, the Association alleges that vendors/tenants of the “flea market” section of the French Market were formerly eligible under the tenure system to move to vacant spots in the “more desirable ‘Farmers Market’” and that “due to an apparently ad hoe and wholly unpromul-gated (sic) policy determination by the FMC[,] the vacant prime locations in the Farmers Market are now ássigned to tenants and vendors without regard to the existing tenure system.” The Association maintains that this practice is also in violation of the Charter and City Code and is, therefore, a “policy determination ... without legal force and effect.”
The Petition seeks injunctive relief in the form of a temporary restraining order, preliminary and permanent injunction “restraining the FMC from the enforcement and implementation” of the Manual, “as ‘updated’ on February 28, 2012, and restraining the FMC from making any changes to the current French Market vendor tenure system unless and until the same are duly adopted and promulgated in accordance with the [Charter] and City Code Section 2-1000.” The Petition further seeks a declaratory judgment that the FMC “must abide” by the Charter, Section 4-107(3) and Code Section 2-1000 “in the adoption and promulgation of its rules and regulations.” Lastly, the Petition seeks, damages, including attorney’s fees and costs.
The trial court issued a temporary restraining order (“TRO”) on March 13, 2012 and set a hearing on the preliminary injunction for March 19, 2012. In opposing the motion for preliminary injunction, the FMC took the position that its adoption and implementation of the “new Flea Market policies and procedures” are | ¿subject to neither the Charter nor the City Code. Rather, the FMC submitted, its decisions are governed by a lease agreement between the FMC and the City. The City also filed an opposition, largely on the *518 basis that the Association could not meet the legal requirements to obtain a preliminary injunction.
The hearing on the preliminary injunction application was held and by judgment dated March 22, 2012, the trial court denied both the applications for preliminary injunction and permanent injunction. The judgment also dissolved the TRO. The Association timely filed an appeal of this judgment.
In the meantime, on March 20, 2012, the Association filed a Motion for Summary Judgment as to its petition for declaratory relief. After a hearing on June 22, 2012, the trial court denied the Motion for Summary Judgment, finding “genuine issues of material fact” and adopting the Reasons for Judgment rendered in connection with the denial of the preliminary/permanent injunctive relief. The judgment was certified as final pursuant to La. C.C. Pr. art. 1915. The Association appealed this judgment as well and the two appeals have been consolidated.[5]
DISCUSSION
Denial of preliminary and permanent injunction
 Ordinarily, a preliminary injunction hearing is held prior to the trial on a permanent injunction, as the former “is an interlocutory procedure to maintain or adjust the existing status of the litigants upon a prima facie showing that to do otherwise would result in irreparable injury, pending the decision on the permanent | (¡injunction, which is dispositive of the issues on the merits.” Fox v. Horsemen’s Benev. & Protective Ass’n, 426 So.2d 278, 279 (La.App. 4 Cir.1983) (Citations omitted); see also, Creppel v. Jefferson Parish, 352 So.2d 297 (La.App. 4 Cir.1977). However, as in the instant matter, the parties may agree to consolidate the trial on the merits of a permanent injunction with the judgment issuing a preliminary injunction. Jefferson Federation of Teachers v. Jefferson Parish School Bd., 11-836, p. 3 (La.App. 5 Cir. 4/10/12), 92 So.3d 962, 963, citing, Mary Moe, L.L.C. v. Louisiana Bd. of Ethics, 03-2220, p. 10 (La.4/14/04), 875 So.2d 22, 29. See also: Whitney Nat. Bank of New Orleans v. Poydras Center Associates, 468 So.2d 1246, 1249 (La.App. 4 Cir.1985) (“a preliminary injunction hearing cannot be converted to a permanent injunction hearing absent a stipulation of the parties to the contrary”).
While a preliminary injunction may issue on a prima facie showing, the “issuance of a permanent injunction, ..., takes place only after a trial on the merits in which the burden of proof is a preponderance of the evidence.” Elysian Fields Church of Christ v. Dillon, 08-0989, p. 8 (La.App. 4 Cir. 3/18/09), 7 So.3d 1227, 1232. (Citation omitted, emphasis in original). In Elysian Fields Church of Christ, supra, this Court discussed the mover’s burden of proof at a trial on a permanent injunction:
A hearing on a permanent injunction is “an ordinary proceeding.” Hall v. Fertility Inst. of New Orleans, 94-1135 p. 4 (La.App. 4 Cir. 12/15/94), 647 So.2d 1348, 1351. In order to obtain a permanent injunction, a party must show by a preponderance of the evidence at an eviden-tiary hearing that he is entitled to the permanent | (¡injunction. Denta-Max v. Maxicare Louiisana [sic], Inc., 95-2128 (La.App. 4 Cir. 3/14/96), 671 So.2d 995, 997. Unlike the special provision of La. C.C.P. art. 3609 providing for the court hearing a preliminary injunction “upon *519 the vei’ified pleadings or supporting affidavits,” there is no such provision in an ordinary proceeding for a permanent injunction.[6]
Id., pp. 6-7, 7 So.3d at 1231.
In this matter, while the parties were entitled to a full trial on the merits on the issuance of a permanent injunction, there was no live testimony at the March 19, 2012 hearing.[7] Rather, the parties simply submitted their memorandums, with attachments and, as the trial court noted, the matter was submitted upon the pleadings and affidavits.[8] No objections were raised at the hearing as to the attachments to the various memorandums.
In reviewing the denial of a preliminary or permanent injunction, we use the abuse of discretion standard of review. A.M.E. Disaster Recovery Services, Inc. v. City of New Orleans, 10-1755, p. 4 (La.App. 4 Cir. 8/24/11), 72 So.3d 454, 456. In so doing, we note that “where the trial court renders judgment on the merits on the petition for a permanent injunction ... the issue of the preliminary injunction becomes moot.” Tobin v. Jindal, 11-0838, p. 5 (La.App. 1 Cir. 2/10/12), 91 So.3d 317, 321, citing Silliman Private School Corp. v. Shareholder Group, 00-0065 (La.App. 1st Cir.2/16/01), 789 So.2d 20, 22-23, writ denied, 01-0594 (La.3/30/01), 788 So.2d 1194. We therefore consider whether the trial court abused its discretion in denying the Association’s permanent injunction.
The parties do not contest that the FMC is a public benefit corporation, as FMC admits this in its Answer. The Association maintains though, that as a public benefit corporation, the FMC is an agency of the executive branch of the government, and as such, it is required to follow certain provisions of the Charter and Ordinance No. 17,611. First, the Association maintains that Section 4-107 of the Charter applies to the FMC, which requires “each officer or department head, with the consent of the Mayor, submit to the Council for its approval any regulations affecting the public and necessary to the performance of the functions assigned to such office or department [and][n]o regulation shall become effective until approved by resolution of the Council.... ”
While the trial court issued no written reasons for judgment, at the conclusion of the March 19, 2012 hearing, the trial court concluded that Section 4-107 does not apply to the FMC. We find no error in the trial court’s conclusion. Section 4-107 falls under the Chapter 1 of the Charter, which deals with the Executive Branch. Section 4-102 lists the parties, offices, departments, boards and commissions which comprise the Executive Branch. A review of Section 4-102 reflects that the FMC is not included in that list.
Perhaps more importantly, Section 4-109 authorizes the City (through the May- or and with the approval of the Council) to *520 “establish public benefit corporations.” The fact that the Charter has a separate section addressing public ^benefit corporations clearly suggests that these entities are not included within the Executive Branch. We therefore find no error in the trial court’s implicit finding that Section 4-107, requiring “each officer or department head” to submit for approval “any regulations affecting the public and necessary to the performance of the functions assigned to such office or department[,]” does not apply to the FMC.
We further find no merit to the Association’s argument that Mayor Mitchell J. Landrieu’s June 3, 2010 Executive Order MJL 10-05[9] somehow transforms the FMC into an executive branch agency for all purposes. While the executive order applies to public benefit corporations, it is clear that its purpose is limited to the manner by which “professional services” contracts are to be awarded. Section 3 of the executive order indicates that the order applies to “any department, agency, board, commission, public benefit corporation, or other entity of the Executive Branch of city government.” The FMC is specifically included as an entity which is “contingent” to the executive branch. We do not interpret these provisions to amend the Charter so as to make the FMC, or other public benefit corporation, subsumed by the executive branch. Rather, we interpret this executive order to simply guide the FMC in entering into contracts for professional services. We find the executive order to be consistent with the rights reserved for the Mayor and Council by the Charter in executing contracts on the City’s behalf. Indeed, as the Louisiana Supreme Court has recognized:
| ¡¡Under New Orleans’ Home Rule Charter, the power to make budgetary decisions is shared between the mayor and the city council. City of New Orleans, Home Rule Charter, Art. Ill, §§ 3-115 — 3-119; Art. IV, §§ 4-206(l)(f)-(g), 4-302(6). The Home Rule Charter gives the mayor and city council authority to contract for professional services through competitive selection procedures, which are fixed separately by Mayoral Executive Order for the executive branch of government and by Council Rule for contracts let by the legislative branch of city government
Civil Service Com’n of City of New Orleans v. City of New Orleans, 02-1812, p. 3 (La.9/9/03), 854 So.2d 322, 326.
Furthermore, La. Const. Art. VI, § 4 provides, in pertinent part that “[e]very home rule charter or plan of government existing or adopted when this constitution is adopted shall remain in effect and may be amended, modified, or repealed as provided therein.” La. Const. Art. VI, § 5(C) provides that “[a] home rule charter shall be adopted, amended, or repealed when approved by a majority of the electors voting thereon at an election held for that purpose.” The Charter has not been amended to include public benefit corporations as part of the executive branch and accordingly, we again conclude that Section 4-107 does not apply to the FMC.
*521 We now turn to the Association’s argument that Section 2-1000 requires the FMC to follow certain procedures in order to adopt “rules and regulations,” and the Association’s position that the updated Manual is a set of “rules and regulations.” While Section 2-1000 specifically applies to public benefit corporations, and the FMC is a public benefit corporation, we find no error in the trial court’s determination that Section 2-1000 does not require the FMC to follow the 11ftprocedure set forth therein in devising a manual for the internal operation of the FMC. We note that Section 2-1000 deals with “regulations,” which is defined therein, but sets forth no standards for enacting “rules ” as the Association contends. The Code expressly states that Section 2-1000 “sets forth procedures for approval of regulations affecting the public and necessary to the functions of municipal entities.” We make the distinction between “rules” and “regulations” only to emphasize that the updated Manual is analogous to a set of internal rules of operation, rather than a set of regulations, as that term is defined by Section 2-1000. Section 2-1000 was added to the Code by Ordinance No. 17,611, dated May 16, 1996. It deals with “Departmental regulations,” and provides that “ ‘municipal entity’ includes any ... department ... or other unit of city government, including but not limited to public benefit corporations, authorized by law or otherwise permitted to enact regulations.” Section 2-1000 defines a “regulation” as “each statement, guide, or requirement of conduct or action of a municipal entity, which affects the public and which has general applicability and the effect of implementing or interpreting substantive law or policy or which prescribes the procedure or practice requirements of a municipal entity....” Importantly, the definition of “regulation” expressly ex-eludes “any statement concerning only the internal management or discipline of a municipal entity” and “any intra-municipal entity memoranda.” Section 2 — 1000(a)(3)(a) and (b).
Because Section 2-1000 includes “public benefit corporations,” the Association maintains that FMC is required to abide by those sections which ^prescribe the manner in which regulations are to be proposed and enacted, but failed to do so. Section (c), for example, requires municipal entities proposing regulations to “arrange for public notice, consisting of at least one advertisement in the official public journal ... and a public hearing.” It further provides that the public notice “shall provide the time, place, and date for the public hearing; a statement describing the subjects and issues involved” and requires the municipal entity to consider “[a]ny and all comments and suggestions ... made at or as a result of the public hearing.” Section (d) through (f) then set forth further procedures for the enactment of regulations, the last of which is that “the council shall then proceed to consider the proposed regulations by means of a resolution approving or disapproving same.” Section 2 — 1000(f). In ruling against the Association on this issue, the trial court stated as follows:
The question then becomes whether the [FMC] must adhere to the requirements of the [Charter], Section 2-1000, which sets forth procedures for adopting, promulgating or amending regulations. Regulations are also defined in this section.
This Court is then guided to an ordinance adopted by the City Council on December 8, 1971, and approved by Mayor Moon Landrieu on December the 9th, 1971.[10]
*522 This ordinance deals specifically with the scope and authority of the [FMC]. Specifically, it provides that the lessee shall adopt rules and regulations for the operation, maintenance and governing of the French Market Properties, as they deem necessary.
Reading the ordinance and the Home Rule Charter in parametri [sic], the Court denies the plaintiffs request for the issuance of a preliminary and permanent [ ^injunction, and heretofore dissolves the TRO issued on March 13, 2012.
In reviewing the pertinent documents, we find no error in the trial court’s ruling.
By Ordinance numbered 4745 and signed by Mayor Landrieu on December 9, 1971, the FMC was granted the privilege of “operating, maintaining and improving the French Market.”[11] This ordinance referred to the FMC as a “non-profit corporation presently engaged in the management and operation of the French Market properties.” The ordinance extended the FMC’s franchise and lease of the French Market for 40 years from January 1, 1972. It further provided that the FMC “shall adopt rules and regulations for the operation, maintenance and governing of the French Market properties, as [it] deem[s] necessary.”
As noted, the lease agreement was renewed on July 2,1992, by an Amended and Restated Lease and Franchise Agreement between the City and the FMC for an additional 60 years. The renewed lease confirmed and ratified all “previous authority, franchises and lease agreements.”
This ordinance clearly reserves to the FMC the right to operate, maintain and govern the French Market as it “deem[s] necessary.” While the record does not contain a copy of the original vendor policy manual (only the updated Manual is in the record), we do not believe the updated Manual to consist of “regulations,” as the Association maintains, that are subject to approval by the City Council under Section 2-1000. The term “regulation” is defined as a “statement” or “guide ... hswhich affects the public and which has general applicability.” We do not construe the updated Manual to be a “statement” or “guide” having general applicability or affecting the public in general. Rather, we read the updated Manual to fall within the exclusion of Section 2-1000’s definition of a “regulation,” which specifically excludes “any statement concerning only the internal management or discipline of a municipal entity.” We find the updated Manual to be a document governing the internal management of the French Market and not a “regulation” under Section 2-1000. Our finding is consistent with the original lease and franchise agreement which provides that the FMC “shall adopt rules and regulations for the operation, maintenance and governing of the French Market properties, as [it] deems necessary.” This statement is not conditioned on the FMC’s obtaining approval of the City Council in adopting rules for the governance of the French Market. We note that other provisions of the lease do require City Council approval[12] for certain actions. Had the *523 intent been for the FMC to obtain City Council approval before issuing internal manuals for its operation of the French Market, the foregoing documents and regulations could easily have so provided.
Thus, for the foregoing reasons, we find no error in the trial court’s denial of a preliminary and permanent injunction.
114PeniaI of motion for summary judgment seeking declaratory relief
Louisiana Code of Civil Procedure Article 2088 provides, in pertinent part, that “[t]he jurisdiction of the trial court over all matters in the case renewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal.” Thereafter, the' trial court retains jurisdiction “only over those matters not reviewable under the appeal.” Id. Article 2088 lists the types of matters over which the trial court continues to have jurisdiction after an order of appeal, none of which apply to this case.[13]
As this Court has held, “proceedings that occurred after the judgment being appealed are not properly before the appellate court and therefore should not be considered.” Rain CII Carbon LLC v. M.H. Detrick Co., 10-0510, p. 3 (La.App. 4 Cir. 9/22/10), 49 So.3d 923, 926. See also: Fairfield Development Co. v. Jackson, 438 So.2d 664, 668 (La.App. 4 Cir.1983), (“trial court’s dismissal of ... rule to dissolve the injunction is void because this action was taken by the trial court after an appeal was granted, and after the trial court was therefore divested of its jurisdiction”).
In the instant matter, an appeal was taken of the trial court’s denial of preliminary and permanent injunctions. At that point, the trial court no longer had | ^jurisdiction over this matter, as jurisdiction was then vested in the appellate court. The trial court’s denial of the motion for summary judgment, designated as a final judgment, is therefore null and we dismiss appeal numbered 2012-CA-1350.
CONCLUSION
Based on the foregoing, we affirm the trial court’s denial of the Association’s applications for preliminary and permanent injunctions. Because appeal numbered 2012-CA-1350 is null, we dismiss that appeal.
AFFIRMED IN PART, DISMISSED IN PART
BELSOME, J., concurs in the result and assigns reasons.

. The Association describes itself as “an association of French Market vendors who have maintained seniority and tenure and assigned stalls or spaces in the French Market under FMC policies, rules and regulations and system of allocating and maintaining rental spaces and stalls.”

. The Petition describes FMC as "a public benefit corporation which was granted a privilege, franchise and leasehold to manage the French Market through December 31, 2011, by ordinance of the New Orleans City Council.”

. This list of amended rules and regulations appears to be illustrative only.

. Indeed, the record contains a copy of an Amended and Restated Lease and Franchise Agreement effective as of July 2, 1992, which was attached to the FMC’s Pre-Hearing Brief for the preliminary injunction hearing. This amended lease extends the FMC's term for 60 years or through December 31, 2050.

. Appeal numbered 2012-CA-964 concerns the trial court's denial of the preliminary and permanent injunctions, while appeal numbered 2012-CA-1350 concerns the denial of the motion for summary judgment.

. La. C.C.Pr. art. 3601(A) provides, in pertinent part, that “[a] injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant. ...”

. Thus, the evidence submitted at the hearing consisted of the memorandums and the attachments to the memorandums, along with certain documents proffered by the Association.

.Prior to the hearing, the FMC and the City filed memorandums in opposition to the Association’s request for injunctive relief. The City’s opposition memorandum focused entirely on the propriety of the issuance of a preliminary injunction. The FMC's memorandum, too, discusses the elements to be met in order for a preliminary injunction to issue, although the FMC does address the Association’s arguments in support of its request for injunctive relief.

. This executive order has as its express purpose the governing of "the procurement of professional services by contract for the Executive Branch of city government.” The term "professional services” is defined as "those that include work rendered by an independent contractor who has professed knowledge or some department of learning or science used by its practical application to the affairs of others or in the practice of an art founded on it ... [including] attorneys, doctors, dentists, veterinarians, architects, engineers, land surveyors, landscape architects, accountants, actuaries, appraisers, business consultants, investment advisors, and claims adjusters

. The ordinance to which the trial court refers is Ordinance No. 4745, noted above *522 and discussed herein.

. Ordinance No. 4745 recognized that two prior ordinances had granted to the FMC the privilege of operating the French Market as early as 1934 and, in 1943, the French Market was leased to the FMC.

. For example, the FMC must have City Council approval to "assign, pledge or mortgage the franchise, lease, subleases or any other property belonging to the [FMC].” Elsewhere, it provides that the FMC "shall accept [the French Market] and shall be entitled to operate the same as a public market and/or any other commercial venture that [the FMC] *523 believes is in the best interest of the City ... subject to the approval of the City Council,” although the 1992 amended lease simply allows the FMC complete authority to "sublease, assign, transfer, pledge and/or hypothe-cate said lease” so long as it does not "in any way affect the right of the [City] to obtain the full and complete ownership and possession of [the French Market].”

. Those matters include the right to: (1) Allow the taking of a deposition, as provided in Article 1433; (2) Extend the return day of the appeal, as provided in Article 2125; (3) Make, or permit the making of, a written narrative of the facts of the case, as provided in Article 2131; (4) Correct any misstatement, irregularity, informality, or omission of the trial record, as provided in Article 2132; (5) Test the solvency of the surety on the appeal bond as of the date of its filing or subsequently, consider objections to the form, substance, and sufficiency of the appeal bond, and permit the curing thereof, as provided in Articles 5123, 5124, and 5126; (6) Grant an appeal to another party; (7) Execute or give effect to the judgment when its execution or effect is not suspended by the appeal; (8) Enter orders permitting the deposit of sums of money within the meaning of Article 4658 of this Code; (9) Impose the penalties provided by Article 2126, or dismiss the appeal, when the appellant fails to timely pay the estimated costs or the difference between the estimated costs and the actual costs of the appeal; or (10) Set and tax costs and expert witness fees.