DANIEL L. DYSART, Judge.
L800 Iberville Street Limited Partnership appeals a judgment of the trial court denying it an application for preliminary injunction seeking to enjoin its tenant, V Restaurant Group, LLC, and Vanna Ly, from violating the New Orleans Sound Ordinance. For the reasons that follow, we affirm the trial court’s judgment.
BACKGROUND:
800 Iberville Street Limited Partnership (“Appellant”), subleases a portion of the ground floor of a building located at 821 Iberville Street in New Orleans to V Restaurant Group, LLC, and Vanna Ly (“Appellees”). Appellees operate the V *1017 Sushi & Martini Restaurant and Bar. The upper four floors of the building are sublet as residential apartments.
Early in 2014, Appellant notified Appel-lees that they were in default pursuant to several conditions of the sublease. One of the conditions which Appellant claimed Appellees had violated was having live entertainment, a violation for which the City also cited Appellees. Following the citation by the |2City, Appellant notified Ap-pellees of a further default of the sublease for exceeding the permissible noise levels under the New Orleans Noise Ordinance.
Appellant filed suit in February of 2014 against the restaurant and its owner, Van-na Ly, who guaranteed the restaurant’s obligations pursuant to the sublease, for eviction and for damages for breach of the lease.
In June of 2014, the parties entered into a consent judgment by which they agreed to hire an acoustical expert to measure the level of noise created in the restaurani/en-tertainment club. The expert, once hired, also measured the noise level in the residential apartments and other parts of the building.
The expert’s report, which was based on mock-up tests, concluded that the sound levels “exceed the L10 of 45 dBA nighttime sound level limit contained in Table 1 of the New Orleans Noise Ordinance for multi-family dwellings.”[1] | ¿Appellant’s ex *1018 pert speculated that the weekend sound levels during events with live D.J.’s would exceed the levels measured in the mockup.
Having reached an impasse on the noise issue, a representative of Appellant’s landlord, Historic Restoration, Inc. (HRI), measured sound levels in one of the residential apartments located above the restaurant. According to Appellant, the noise levels exceeded the maximum levels allowed by the ordinance for multi-family dwellings. Following this testing, Appellant again amended its petition seeking, among other things, to enjoin Appellees from exceeding the allowable noise levels.
A hearing was held on Appellant’s application for preliminary injunction seeking to enjoin Appellees from violating the City’s noise ordinances. Appellant called two witnesses, both employed by HRI, who testified concerning complaints received by tenants of the residential apartments above the restaurant. There was testimony given that recent vacancies in the apartments were a direct result of the excessive noise level, and that the noise levels exceeded those allowed for a multifamily property.
Following the hearing, the trial court denied Appellant’s application for preliminary injunction finding that the area was designated as VCC-2 (Vieux Carré Commercial), and, therefore, the noise levels proven by Appellants were not in excess of the noise ordinances.
DISCUSSION:
|sAn appellate court reviews the denial of a preliminary injunction under the abuse of discretion standard. French Market Vendors Ass’n, Inc. v. French Market Corp., 12-0964, p. 6 (La.App. 4 Cir. 2/13/13), 155 So.3d 514, 519, citing A.M.E. Disaster Recovery Services, Inc. v. City of New Orleans, 10-1755, p. 4 (La.App. 4 Cir. 8/24/11), 72 So.3d 454, 456.
The parties do not contest that the property at issue is zoned VCC-2. The contested issue is whether the noise levels applicable to VCC-2 or the more restrictive noise levels applicable to multi-family dwellings should be enforced.
Appellant argues that the trial court erred in not applying the noise levels permitted in the more restrictive land use category for multi-family dwellings.
Specifically, Appellant argues that there are two land-use categories applicable to the property in question — multi-family dwellings and VCC-2. Appellant contends that the more restrictive land use category, i.e., multi-family dwellings, should apply, citing Section 66-202(e) of the Code of Ordinances (NOCO). Therefore, the trial court erred in applying the less restrictive *1019 sound restrictions applicable to VCC-2 properties.
Appellee argues that the parties agree that the land use designation and the zoning is VCC-2. The fact that Appellant’s restaurant is located below multiple apartments is of no moment, as the whole of the property is zoned VCC-2.
Appellee argues further that Article 3, Section 3.1.5 of the Comprehensive Zoning Ordinance (CZO), defines the historic districts, and explains the distinction between one zoning district and another:
|fiA district name or letter-numbered combination shown on the Official Zoning Map indicates that the regulations pertaining to the district designated by that name or letter-number combination apply to all properties within the boundary lines around the letter-number combination that is shown or indicated...
Appellee, citing Article 8, Section 8.5.1 of the NOCO, explains that the purpose of the VCC-2 zoning district is to “permit more intensive commercial uses than in VCC-1 District, yet protect the historic character of the Vieux Carré.... ” While multi-family residences are permitted in a VCC-2 district, this permitted use does not change the overall zoning designation, or its receiving use category.
Additionally, Appellee argues that the sublease between the parties allows the restaurant to have electronically amplified music, with predetermined sound levels of between 84 and 104 decibels.
Appellant offered videos of sound testing, which were made of a sound-recording machine placed inside one of the apartments located on top of the restaurant. The record indicates that the average decibel level attained during the 7 a.m. to 10 p.m. period was 42 decibels. Several recordings were made during the 10 p.m. to 7 a.m. period. The highest decibel level recorded during that time was 64 decibels; however, the average decibel level, which is the standard provided in the ordinance, was roughly 54-55 decibels.
Table 1 of Section 66-202 of the CZO provides that the maximum level of sound emanating from property zoned VCC-2 is 80 decibels from 7 a.m. to 10 p.m., and 60 decibels from 10 p.m. to 7 a.m.
|7Based on the Appellant’s own evidence, the trial court found that the VCC-2 designation for the building allowed a maximum decibel level of 60 decibels during the late evening/early morning hours, and that the evidence did not support a finding that the ordinance had been violated. We find no error in this considered ruling by the trial court.
Appellant also argues that the trial court erred in finding that it had not demonstrated that irreparable harm would result if a preliminary injunction were not granted, as a violation of a statute precludes a showing of irreparable harm.
Our reading of the trial court’s ruling does not support this contention. The trial court noted that it was aware that the violation of a statute precludes a showing of irreparable' harm. However, the trial court did not find that any law, statute or ordinance had been violated, and, as such, the irreparable harm standard applied. As the trial court did not find that Appellant had proven irreparable harm, it denied the application for preliminary injunction.
Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.
AFFIRMED

. • Sec. 66-202. — Maximum permissible sound levels by receiving land use.
(a)
No person shall operate or cause to be operated any source of sound in such a manner as to create a sound level which exceeds the limits set forth for the receiving land use category in table 1.
(b)
L10 is the A-weighted sound pressure level which is exceeded ten percent of the time in any measurement period. The measurement period shall not be less than ten minutes when measured at or beyond the property boundaty of the receiving land use category (example L10 is the sound level that is exceeded a total of one minute in a ten-minute period). In the SHD/VCE, the measurement may be taken at a minimum distance of 7.5 meters (25 feet) from the source being measured within a minimum clearance of three feet from any reflecting surface.
(c)
For any source of sound the -maximum sound level (Lmax) shall not be exceeded.
(d)
In the case of two-family or multiple-family dwellings the sound level shall be measured within an. adjacent intrabuilding dwelling.
(e)
When a noise source cán be identified and its noise measured in more than one land use category, the limits of the more restrictive use shall apply at the boundary and within the most restrictive land use category. This provision shall not apply to the SHD/VCE.
TABLE 1
SOUND LEVELS BY RECEIVING LAND USE
[[Image here]]
*1018 [[Image here]]
*1019 [[Image here]]