PAUL A. BONIN, Judge.
 

 [ jWe consider this an appeal from a permanent injunction issued, without bond, on March 28, 2008 against the Tibbs faction
 
 [1]
 
 “forever enjoining, restraining, and prohibiting [the Tibbs faction] from interfering with the business and financial matters related to the corporation or representing to third parties that they or any of them are duly authorized representatives of the corporation or the church.” The corporation is the Elysian Fields Church of Christ, a Louisiana non-profit corporation. For the reasons which follow, we reverse the judgment granting the permanent injunction and remand the matter to the district court.
 

 
 *1229
 

 History of the Case
 

 The Elysian Fields Church of Christ, like any non-profit corporation in Louisiana, is governed by its articles of corporation. Elysian Fields Church of Christ was first incorporated in 1983 and amended its articles on several occasions thereafter. On December 27, 2006, amended and restated articles of incorporation were filed with the Louisiana Secretary of State. It appears from the record that|2the primary reason for a change in the governance of the corporation was that there was an insufficient number of men “willing and qualified to serve on the Board of Elders.” This necessitated the creation of a Board of Directors to govern the affairs of the corporation.
 

 The 2006 amendment provided that there would be four directors and named Otis Shields, Mikel Wilson, Barnabas Tibbs, and James Smith as the directors. Mr. Tibbs was named as treasurer and Mr. Larry Dillon was named as executive secretary, making him responsible to “be the custodian of the church membership records.” Article VII of the amended articles provided that “The members of the Corporation shall consist of all persons who shall comprise the congregation of the church, becoming members in accordance with the New Testament, and as may be accepted by placing membership from other Churches of Christ, in accordance with guidelines set forth by the Board.” The 2006 amendments also contained the provision that the articles of incorporation could be amended upon “approval of the majority of the Board of Elders
 
 or in the absence of the Board of Elders, then the Board of Directors
 
 ...” (underlining in original)
 

 During the year 2007 disagreement arose among the four directors about the continued employment of the church’s pastor, Brother Jarvis James. Two directors, Mr. Shields and Mr. Wilson, took the side of the pastor. The other two directors, Mr. Tibbs and Mr. Smith, were adamant about terminating the pastor. The difference of view became irreconcilable and the evenly split board of ^directors remained deadlocked. The Shields faction
 
 [2]
 
 became concerned that the Tibbs faction would seize control of the corporation’s assets, including its financial accounts, amend the articles of corporation, and fire the pastor. The Tibbs faction had similar concerns. Each faction had a following in the membership.
 

 Four outside ministers were called into the church to attempt a mediation and reconciliation, but were unsuccessful. At least one faction requested police security at worship services and meetings because of real or perceived threats. A portion of one of the meetings was captured on DVD by a Tibbs faction member.
 
 [3]
 

 On March 5, 2008, the Shields faction submitted one form to the Louisiana Secretary of State deleting Mr. Tibbs as registered agent and Mr. Smith as a director and another form deleting Mr. Tibbs as treasurer and director and Mr. Dillon as executive secretary. These actions were done pursuant to a meeting which occurred on March 2, 2008, which the Shields faction contends was a membership meeting.
 

 On March 11, 2008, the Shields faction in the name of the Elysian Fields Church of Christ filed a petition for writ of injunction against the Tibbs faction, in which petition it sought a temporary restraining order, a preliminary injunction and, ultimately, a permanent injunction “restraining, enjoin
 
 *1230
 
 ing, and prohibiting Defendants from interfering with the business and financial matters related to the corporation.” The district judge granted a TRO conditioned upon $500 security and set a hearing on the request for preliminary injunction for March 20, 2008.
 

 |4Later on March 11, 2008, the Tibbs faction filed its own petition for temporary restraining order and permanent injunction, writ of
 
 quo warranto
 
 and writ of mandamus, in which it sought to enjoin the Shields faction “from transferring any assets or funds from any financial institution.”
 
 [4]
 
 A different district judge granted the TRO without requiring bond and set a hearing on the preliminary injunction request for March 20, 2008.
 

 Before the scheduled hearing on the opposing requests for preliminary injunction, the two cases were consolidated before a single district judge, who proceeded to consider the requests for preliminary injunction on March 20, 2008. The district judge had issued an order on March 12, 2008, that,
 
 inter alia,
 
 the hearing on the application for preliminary injunction would be conducted “upon the verified pleadings and/or supporting affidavits and oral arguments only.” The order also required supporting affidavits to be filed not less than 72 hours before the hearing and opposing affidavits not less than 24 hours before the hearing.
 

 The Hearing on the Requests for Preliminary Injunctions
 

 During the hearing the trial court allowed considerable oral argument from counsel. Submitted to the court was a notarized statement of the pastor with an unverified “petition” signed by 80 people. The court also received, over the objection of the Tibbs faction, about 28 affidavits, untimely filed. Each affiant claimed to be a member of the Elysian Fields Church of Christ and basically confirmed that he or she cast his or her vote in favor of the Shields faction and|Bagainst the Tibbs faction. The court also permitted the Shields faction to supplement its submissions with proof that “notice” of a membership meeting had been given to the members in the church bulletin. It also appears that the court accepted a late submission from the Tibbs faction, including an affidavit verifying the previously mentioned DVD as well as the videotape and another affidavit verifying that none of the weekly church bulletins in 2008, which were attached, gave “notice” of a membership meeting.
 

 On March 26, 2008, the trial court rendered judgment ordering “that an injunction issue upon the posting of a $500.00 bond in favor of Elysian Fields Church of Christ and against [the Tibbs faction] enjoining them from interfering with the business and financial matters of the Elysian Fields Church of Christ.”
 
 [5]
 
 The record shows that the bond was posted on March 28, 2008. In her written reasons the trial judge expressed the court’s reluctance “to interfere in the operations of a church” but concluded after viewing the DVD “that a majority of the congregation supports the outcome ordered by this Court.”
 

 On March 28, 2008, without any further proceedings or stipulations, the trial court rendered another judgment, from which we quoted above: “forever enjoining, re
 
 *1231
 
 straining, and prohibiting [the Tibbs faction] from interfering with the business and financial matters related to the corporation or representing to third parties that they or any of them are duly authorized representatives of the corporation or the church.”
 

 IfiOn May 28, 2008, the Tibbs faction timely filed a devolutive appeal from “the Order dated March 28, 2008.” This appeal follows.
 

 The Preliminary Injunction Dated March 26, 2008
 

 We review the preliminary injunction judgment of March 26, 2008, for the sole purpose of highlighting the distinction between the
 
 preliminary
 
 injunction which issued on March 26, 2008 and the
 
 permanent
 
 injunction which is the subject of this appeal. Our court in
 
 Desire Narcotics Rehabilitation Center, Inc. v. State, Department of Health and Hospitals,
 
 07-0390, pp. 3-4 (La.App. 4 Cir. 10/17/07), 970 So.2d 17, 20 explained in summary form
 
 [6]
 
 the preliminary injunction:
 

 Article 3601 of the Louisiana Code of Civil Procedure provides that, “an injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law ...” La.Code. Civ. Proc. art. 3601. Generally, in order to obtain a preliminary injunction pursuant to article 3601, a petitioner must show that he will suffer irreparable injury in the absence of the injunction, that he is entitled to the relief sought, and that he
 
 can make a prima facie showing that he will prevail on the merits. ...
 

 A preliminary injunction is an interlocutory procedural device designed to preserve the status quo as it exists between the parties,
 
 pending trial on the merits. ...
 
 The trial judge in a preliminary injunction hearing has great discretion to grant or deny the relief.... An appellate court will disturb the trial court judgment only upon a showing that the trial court abused its great discretion. ...
 

 (emphasis added)
 

 The prima facie showing standard of proof to obtain a preliminary injunction is “less than that required for a permanent injunction.”
 
 Historic Restoration, Inc. v. RSUI Indem. Company,
 
 06-1178, p. 11 (La.App. 4 Cir. 3/21/07), 955 So.2d 200, 208. A hearing on a permanent injunction is “an ordinary proceeding.”
 
 Hall v. Fertility Inst. of New Orleans,
 
 94-1135 p. 4 (La.App. 4 Cir. 12/15/94), 647 So.2d 1348, 1351. In order to obtain a permanent injunction, a party must show by a preponderance of the evidence at an evidentiary hearing that he is entitled to the permanent injunction.
 
 Denta-Max v. Maxicare Louiisana, Inc.,
 
 95-2128 (La.App. 4 Cir; 3/14/96), 671 So.2d 995, 997. Unlike the special provision of La. C.C.P. art. 3609 providing for the court hearing a preliminary injunction “upon the verified pleadings or supporting affidavits,” there is no such provision in an ordinary proceeding for a permanent injunction.
 

 For the very reason that a preliminary injunction is merely provisional, the successful applicant is required in the usual case to furnish security to indemnify a person wrongfully enjoined for costs incurred and damages sustained. La. C.C.P. art. 3610. No security is required for a permanent injunction.
 

 The trial judge had much discretion in ordering the preliminary injunction, with bond, in this matter. The judgment of March 26, 2008, granting the preliminary injunction is now final because it was
 
 *1232
 
 not appealed within fifteen days. La. C.C.P. art. 3612(C).
 
 [7]
 
 The preliminary injunction of March 26, 2008, secured by a bond, remains in effect during the pen-dency of the action or until it is dissolved or modified by the court. La. C.C.P. arts. 3601(C) and 3607.
 

 The Permanent Injunction Dated March 28, 2008
 

 There is no doubt that the judgment dated March 28, 2008 is a judgment granting a permanent injunction. The very language of the judgment itself restrains, prohibits, and enjoins the Tibbs faction “forever.” Moreover, the | ¡¿judgment issued without any requirement for security, which is of course permissible for a permanent, but not preliminary, injunction.
 

 This case, however, was only tried on the request for a preliminary injunction, and the evidentiary procedures employed are authorized only in preliminary injunction proceedings. The record discloses “no stipulation between the parties that [the preliminary injunction] hearing would also be considered as a hearing on a permanent injunction.”
 
 Springlake Homeowners Ass’n, Inc. v. Pecot,
 
 321 So.2d 789, 790 (La.App. 4 th Cir.1975). “[T]he jurisprudence is clear that a preliminary hearing cannot be converted to a permanent injunction hearing absent a stipulation of the parties to the contrary.”
 
 Louisiana Service and Contracting Co., Inc. v. St. Bernard Parish Government,
 
 08-0174, p. 5 (La.App. 4 Cir. 11/26/08), 1 So.2d 557.
 
 [8]
 

 The Tibbs faction is entitled to a “full trial on the merits of the permanent injunction.”
 
 SpringlaJce Homeowners, supra.
 
 “The issuance of a permanent injunction, ..., takes place
 
 only
 
 after a trial on the merits in which the burden of proof is a preponderance of the evidence rather than a prima facie showing.”
 
 Bollinger Machine Shop and Shipyard, Inc. v. United States Marine, Inc.,
 
 595 So.2d 756, 758 (La.App. 4 th Cir.1992) (emphasis in original).
 

 |
 
 ¡Decree
 

 We reverse the judgment of March 28, 2008 and remand the matter to the trial court for further proceedings.
 

 REVERSED AND REMANDED.
 

 [1]
 

 . Our reference to the “Tibbs faction” includes Barnabas Tibbs, Larry Dillon, James Smith, and Rogers Nunnery.
 

 [2]
 

 . The reference to the "Shields faction” includes Otis Shields, Mikel Wilson, and the pastor, Jarvis James.
 

 [3]
 

 . The DVD was viewed by the district judge.
 

 [4]
 

 . The petition also sought to demand that the Shields faction show by what authority they changed the articles of incorporation and to cause them to "refrain from all acts in contravention of the Louisiana Nonprofit Corporation laws”.
 

 [5]
 

 . The judgment also denied the injunction, quo warranto and mandamus request of the Tibbs faction.
 

 [6]
 

 . The ellipses outside of quotations indicate citations omitted.
 

 [7]
 

 . The fifteen-day appeal limitation applies only to preliminary injunctions and not to permanent injunctions the delays for which are "governed by the same delays afforded in ordinary proceedings.”
 
 Brickman v. Board of Directors of West Jefferson General Hospital,
 
 363 So.2d 86 (La.App. 4 th Cir.1978).
 

 [8]
 

 . A trial court may be able to determine from the hearing on the preliminary injunction request that the matter is so unmeritorious that no further proceedings are required. In other words, it may be that in denying a preliminary injunction a court could determine that there is no legal basis for a permanent injunction, but it could not from granting a preliminary injunction determine at the same time to grant the permanent injunction in the absence of a stipulation.