Judge Marion F. Edwards, Pro Tempore[1]
hRasier, LLC, and John Doe appeal the district judge’s denial of their request for a preliminary injunction which sought to prevent the City of New Orleans from acting on a public records request brought by the New Orleans Advocate seeking the release of information from the City’s transportation network company driver registry and trip data relative to third-party automobile drivers working on a contractual basis. Finding merit in appellants’ argument that the district judge abused her discretion in ruling that Mr. Doe’s privacy rights will not be. violated by the City’s release of the driver registry information, we reverse in part the district court’s judgment, grant in part the appellants’ request for a preliminary injunction, and affirm in all other aspects. We now explain our ruling in greater detail.
I
We first examine this matter’s procedural and factual background.
This matter concerns the City’s attempt to respond to a local newspaper’s public records request for documents detailing the operation of Rasier, a wholly owned subsidiary of Uber and one of the City’s licensed transportation network |2companies. In 2015, the City passed a series of laws permitting TNCs to operate within the parish. A TNC is an organization “that connects passengers with drivers using their personal vehicle for purposes of for-hire transportation services by means of a TNC digital network.” City Code Section 162-1700. TNC services comprise “the transportation of a passenger between points chosen by the passenger and is prearranged by a TNC using a TNC digital network.” Id. A TNC digital network is “any online-enabled application, software, website, or system offered or utilized by a TNC that enables the prearrangement of rides with TNC drivers.” Id. A TNC driver is “a person who uses his or her personal vehicle to provide for-hire transportation services for passengers matched through a TNC digital network. A TNC driver need not be an employee of a TNC.” Id. A TNC vehicle is a motor vehicle used to provide TNC services through a TNC network that is:
(1) Owned or leased by the TNC driver, or otherwise authorized for use by the TNC driver to provide TNC services, and is not wholly owned or leased by a TNC;
(2) Not licensed as a taxicab, limousine, horse-drawn carriage, pedicab, general charter tour vehicle, sightseeing tour vehicle, courtesy vehicle, non-emergency medical vehicle, airport shuttle, or any other classification of for-hire vehicle as provided under Article III of this *811 chapter or licensed by any other political subdivision or the Louisiana Public Service Commission;[2]
Therefore, TNCs, like Rasier/Uber, are transportation companies that have developed proprietary software that enables smartphone users to hail rides via the internet from a member of the TNC’s fleet of contractor drivers. The TNCs market Istheir services under the company’s trade name, process payments from riders, and provide confirmation receipts once a ride is complete.
The City’s ordinances also reveal that the City does not regulate TNCs like taxicab companies. That is, unlike its licensure of taxicabs, the City’s ordinances permit TNCs to self-regulate and to ensure that its drivers satisfy the City’s permitting standards. For example, a TNC driver does not obtain his Certificate of Public Necessity and Convenience/CPNC or driver’s permit through the City. Rather, he obtains licensure by virtue of his contractual affiliation with the TNC, which serves as the de facto regulatory authority for its drivers. Further, the TNC is tasked with performing criminal background checks and drug testing on its drivers. Moreover, each TNC is required to maintain a registry of all employed or contracted TNC drivers and to provide an updated list of drivers to the City each month. The TNC registry shall include each TNC driver’s: 1) full name; 2) date of birth; 3) Louisiana driver’s license number; 4) license plate number of the vehicle used by the driver to provide TNC services; and, 5) active dates of employment. See City Code Section 162-1709. TNC drivers, unlike taxicab drivers, do not hold city-issued occupational licenses.
On February 3, 2016, the New Orleans Advocate filed a public records request with the City seeking both Raster’s TNC driver registry as well as additional trip data submitted by all TNCs' operating in Orleans Parish. The City, on February 24, 2016, informed Rasier that it had received the Advocate’s request, concluded that the requested information was not exempt from disclosure, and 1¿noted that it intended to comply with the request. The City did note, however, that it intended to redact TNC driver’s license numbers and birth dates prior to disclosure. The City, accordingly, notified Rasier that it would be disclosing all of its drivers’ names, vehicle registration/license plate numbers, and dates of employment. Rasier opposed the disclosure, arguing that the information to be released contained information that was exempt from Louisiana’s Public Records Act.
On March 1,2016, Rasier and John Doe, individually and on behalf of other similarly situated TNC drivers, simultaneously filed separate verified petitions seeking temporary restraining orders and injunc-tive relief seeking to prohibit the City’s compliance with the Advocate’s public records request. Rasier asserted that the requested information is protected by the Public Records Act’s trade secret exemption, while Mr. Doe asserted that the release of the requested information would violate his constitutional rights to privacy. See La. Const. Art. 1, Section 5; La. Const. Art. XII, Section 3; La. R.S. 44:3.2. Temporary restraining orders were issued in both matters. The two suits were subsequently consolidated prior to the preliminary injunction hearing.[3]
*812 On May 6, 2016, the district judge conducted a hearing on the appellants’ request for a preliminary injunction and took the matter under advisement. The district judge subsequently issued a judgment on July 8, 2016 that granted the ^appellants’ request for a preliminary injunction enjoining the City’s release of the aggregate trip data, but denied their request with respect to the redacted driver registry information. The City did not appeal that portion of the judgment which enjoined it from releasing the aggregate trip data. This portion of the judgment, accordingly, is now final. See La. C.C.P. art. 3612 C; Elysian Fields Church of Christ v. Dillon, 08-0989, p. 7 (La. App. 4 Cir. 3/18/09), 7 So.3d 1227, 1231-1232. Rasier and Mr. Doe, on the other hand, appeal that portion of the judgment that denied their request to enjoin the release of the redacted driver registry information. The appellants timely secured a suspensive appeal and persuaded the district judge to stay the effect of her July 8, 2016 judgment until this Court acts upon appellants’ appeal.
II
“A preliminary injunction is an interlocutory procedural device designed to preserve the status quo as it exists between the parties, pending trial on the merits.” Smith v. Brumfield, 13-1171, p. 5 (La. App. 4 Cir. 1/15/14), 133 So.3d 70, 74, quoting Elysian Fields, supra. Injunctive relief is an equitable remedy, which is ordinarily only available when a party has no adequate legal remedy. Cf. West v. Town of Winnsboro, 252 La. 605, 211 So.2d 665, 670 (La. 1967) on reh’g (3/25/68) (“By adequate remedy at law is meant one which is as speedy, efficient, and complete as the remedy in equity.”). See also C. Napoo, Inc. v. City of New Orleans, 06-0603, p. 6 (La. App. 4 Cir. 3/7/07), 955 So.2d 155, 160 (“An injunction is a harsh, drastic remedy that should only issue where the petitioner is threatened with irreparable harm and has no adequate remedy at law.”).
A "court may hear an application for a preliminary injunction ... upon the verified pleadings or supporting affidavits, or may take proof as in ordinary cases.” La. C.C.P. art. 3609. “A preliminary injunction shall not issue unless notice is given to the adverse party and an opportunity had for a hearing.” La. C.C.P. art. 3602. Ordinarily, to prevail in the district court on a petition for preliminary injunction, the petitioner is required to establish by prima facie evidence that: 1) he will suffer irreparable injury, loss, or damage if the motion for preliminary injunction is not granted; and 2) he is entitled to a preliminary injunction through at least a showing that he will likely prevail on the merits of the case. See Historic Restoration, Inc. v. RSUI Indem. Co., 06-1178, p. 11 (La. App. 4 Cir. 3/21/07), 955 So.2d 200, 208; La. C.C.P. art. 3601. The prima facie standard of proof to obtain a preliminary injunction is less than that required for a permanent injunction. See Smith, 13-1171 at p. 6, 133 So.3d at 74.
In order to prove that irreparable harm, will befall a party from the non-issuance of a preliminary injunction, the petitioning party must show that “money damages cannot adequately compensate for the injuries suffered and that the injuries ‘cannot be measured .by pecuniary standards,’ ” Historic Restoration, 06-1178 at p. 11, 955 So.2d at 208 (quoting Saun *813 ders v. Stafford, 05-0205, p. 6 (La. App. 4 Cir. 1/11/06), 923 So.2d 751, 754). “[M]ere inconvenience is not enough to show irreparable injury needed for the issuance of a preliminary injunction.” Hobbs v. Gorman, 595 So.2d 1264, 1266 (La. App. 4th Cir. 1992). However, in Jurisich v. Jenkins, 99-0076, p. 4 (La. 10/19/99), 749 So.2d 597, 599, the Supreme Court established an exception to the irreparable harm requirement for instances when a plaintiff requests a prohibitory injunction that seeks only to order compliance with a prohibitory law. The requisite showing of irreparable injury is dispensed with “when the conduct sought to be restrained is unconstitutional or unlawful, ie., when the conduct sought to be enjoined constitutes a direct violation of a prohibitory law and/or a violation of a constitutional right.” Jurisich, 99-0076, p. 4, 749 So.2d at 599, citing to South Cent. Bell Tel. Co. v. Louisiana Pub. Serv. Comm’n, 555 So.2d 1370 (La. 1990). Thus, under Jurisich, “[o]nce a plaintiff has made a prima facie showing that the conduct to be enjoined is repro-bated by law, the petitioner is entitled to injunctive relief without the necessity of showing that no other adequate legal remedy exists.” 99-0076, p. 4, 749 So.2d at 599.
“A trial court has broad discretion in the granting or denial of a preliminary injunction, and will not be disturbed on review absent a clear abuse of that discretion.” Yokum v. Pat O’Brien’s Bar, Inc., 12-217, p. 6 (La. App. 4 Cir. 8/15/12), 99 So.3d 74, 80 (citing Smith v. West Virginia Oil & Gas Co., 373 So.2d 488, 493 (La. 1979)) (internal quotations omitted). This “broad standard is, of course, based upon a conclusion that the trial court committed no error of law and was not manifestly erroneous or clearly wrong in making a factual finding that was necessary to the proper exercise of its discretion.” Yokum, 12-0217 at p. 7, 99 So.3d at 80 (citing South East Auto Dealers Rental Ass’n, Inc. v. EZ Rent to Own, Inc., 07-0599, pp. 4-5 (La. App. 4 Cir. 2/27/08), 980 So.2d 89, 93). Absent a clear abuse of discretion, the denial of a preliminary injunction will not be overturned on appeal. See Oestreicher v. Hackett, 94-2573, p. 3 (La. App. 4 Cir. 5/16/95), 660 So.2d 29, 31.
Ill
On appeal, the appellants raise two assignments of error respecting the district judge’s refusal to enjoin the release of the redacted driver registry information. The appellants first argue that the redacted driver information is a protected trade secret, and thus exempt from release under Louisiana’s Public Records Act. See La. R.S. 44:3.2. A release of this information in violation of this statutory exemption, they contend, would result in irreparable harm to Raster’s business operation. Having reviewed the redacted driver registry information in light of Louisiana’s Public Records Act, we conclude that the clear statutory language does not compel the protection of the redacted driver information. The district judge, accordingly, did not abuse her discretion in refusing to enjoin the release on this basis.
The appellants next assert that Mr. Doe has a constitutionally protected right of privacy in the information, contained in the redacted driver registry information and that release of this information will cause him irreparable harm. Having reviewed the evidence and applicable law, we conclude that the district judge abused her discretion in refusing to enjoin the release on privacy grounds. Specifically, Section 162-49, of New Orleans’ City Code, clearly establishes the [9ambit of what the City may release to the public with respect to driver data. This Section, therefore, controls the scope of the public records request for driver registry data in this case *814 as well as the nature of the information the City may release to the Advocate. To the extent that the Advocate’s request exceeds the scope of publicly releasable information delineated in Section 162-49, then such request should have been refuséd by the City, or enjoined by the district judge.
IV
We now examine the evidence introduced by the parties at the hearing on appellants’ request for a preliminary injunction.[4] Rasier, in support of its motion, introduced an affidavit signed by Tom Ma-guire, General Manager for Uber Technologies, Inc., its parent company and sole member. Mr. Maguire avers that:
Uber is a technology company that creates a mobile app-based digital network that enables registered users to connect with third-party transportation providers. Using Uber’s smartphone application (the “Uber App”), a user can request transportation in as little as two taps on his or her smartphone. If a third-party transportation provider accepts a rider’s request, the Uber App helps the two persons find each other. The Uber App also helps the rider pay the transportation provider after the ride is complete. Rasier licenses the Uber App and other related software from Uber and uses it to operate a transportation network company (“TNC”) in New Orleans and elsewhere.
| inMr. Maguire notes that in New Orleans the Uber App allows riders to connect with ride services such as uberX, uberXL, and uberBLACK, but notes that Rasier does not own any of the vehicles. Rather, Mr. Maguire avers that Rasier licenses the Uber App to third-party transportation providers, ie., drivers, who pay Rasier a portion of the payments they receive from riders in exchange for access to the Uber App network. Notably, Mr. Maguire also states: “Rasier and its affiliates spend significant time and money identifying and recruiting persons to use the Uber App as drivers. For example, Rasier and its affiliates have negotiated with local businesses to provide discounts and other perquisites to the third-party transportation providers that use the Uber App. From time to time, Rasier and its affiliates also offer monetary and other incentives to attract new drivers.”
Mr. Maguire also asserts that “Rasier and its affiliates spend significant time and money attempting to garner ride requests from riders in the New Orleans market. Rasier and its affiliates offer monetary and other incentives to encourage new riders to use the Uber App.” Mr. Maguire contends that a release of the driver’s registry information “would be of immense value to Rasier’s competitors.” This is so because the driver’s list “would offer competitors insight into the size of Rasier’s New Orleans operations, and a shortcut to poach potential driver-partners,” Mr. Maguire states that a competitor can use the re *815 quested information to “assess the effect of its own promotions/recruiting campaigns or Raster’s own promotions/recruiting campaigns.”
| nFurther, Mr. Maguire asserts that release of the requested information “will provide valuable information to potential competitors regarding whether to expand to New Orleans and how much to invest doing so.” He also contends that taxi companies use the information “to better decide where to allocate their resources to try to compete with the services offered through drivers using the Uber App.” Raster has taken steps to keep the information, which “is not publicly known or readily ascertainable,” confidential and secure because of the competitive harm that would result from the release of the requested information. Its efforts at protecting this information have also been motivated by the fact that it has invested and continues to invest “substantial amounts of time and effort into the development of the information, the release of which would cause Raster and its affiliates irreparable competitive harm.”
Mr. Maguire also avers that a redacted release of the driver registry information would be “insufficient,” because some of Raster’s drivers have reported receiving at their home address harassing mailings from the Taxicab Legal Fund. He contends that as a result of a prior release of driver registry information, the Taxicab Legal Fund sent these mailings to Uber drivers in an effort to scare them into thinking that they were breaking the law by driving for Uber. In support of this assertion, Mr. Maguire attaches a copy of one such mailing. The mailing states:
If you are driving for UberX without the proper license, you may be breaking the law.
hi)A lawsuit seeking monetary damages has been filed against UberX drivers. Lawsuit 2016-905 claims that some UberX drivers are in violation of state law that requires for hire vehicles transporting passengers to have a valid Louisiana Class “D” Chauffer’s license or a Commercial Driver’s license that encompasses Class “D” Chauffer’s license privileges.
Aside from introducing into evidence a copy of the foregoing mailing, it does not appear that Mr. Doe introduced any other evidence at the preliminary injunction hearing. In his verified petition, however, he asserts that he is an Uber driver and, in connection therewith, he has provided Uber with his full name, home address, birth date, driver’s license number, vehicle license plate number, make and model of his personal vehicle, and social security number. He also averred that as an Uber driver, he has always believed and expected that his personal information would be kept confidential by Raster and provided to the City solely to comply with the City’s TNC ordinances. Mr. Doe, however, contends that he has received unwanted harassing mailings at his home the intent of which was to scare him into thinking that he was breaking the law by driving for Uber. Mr. Doe contends that he will suffer further harassment should the requested information be released. He, therefore, contends that release of the redacted driver registry information will violate his constitutionally protected privacy interests.
It does not appear from the record that the City introduced any exhibits at the hearing on appellant’s request for a preliminary injunction.
V
11RIn this Part, we explain why the district judge did not err when she concluded that the redacted driver registry information is not protected by the public record law’s trade secret exception.
*816 A
Article XII, Section 3 of the Louisiana Constitution provides that “no person shall be denied the right to examine public documents, except in cases established by law.” This constitutional provision has been codified in the Public Records Act, LSA-R.S. 44:1, et seq., which includes in its definition of “public records” all docu-mentaiy materials “having been used, being in use, or prepared, possessed,, or retained for use” in the performance of any function under the authority of the constitution or laws of this state by a public body.” La. R.S. 44:1A(2)(a). Section 31. of Title 44 of the Louisiana Revised Statutes provides:
A. Providing access to public records is a responsibility and duty of, the appointive or elective office of a custodian and his employees.
B. (1) Except as otherwise -provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter, any person of the age of, majority may inspect, copy, or reproduce any public record.
(2) Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter,.any person may obtain a copy or reproduction of any public record.
(3) The burden of proving that a public record is not subject to inspection, copying, or reproduction shall rest with the custodian.
|14By the very language of the act, it is clear that the legislature sought to guarantee, in the most expansive and unrestricted way possible, the right of the public to inspect and reproduce those records which the laws deem to be public. See Angelo Iafrate Construction, L.L.C. v. State, Department of Transportation and Development, 03-0892, p. 4 (La. App. 1 Cir. 5/14/04), 879 So.2d 250, 254. The language evinces “no intent on the part of the legislature to qualify, in any way, the right of access,” Id. As with the constitutional provision, the Public Records Act should be construed, liberally, and any doubt must be resolved in favor of the right of access. See Landis v. Moreau, 00-1157, p. 4 (La. 2/21/01), 779 So.2d 691, 694. The right of access to public records is fundamental; therefore, access may be denied only when the law specifically and unequivocally denies access. See Hilliard v. Litchfield, 01-1987, p. 4 (La. App. 1 Cir. 6/21/02), 822 So.2d 743, 746.
All exceptions, exemptions, and limitations to the laws pertáining to public records and their disclosure pursuant to the Public Records Act must be provided for in the act or in the Louisiana Constitution. See La. R.S. 44:4.1. For example, Section 32 B of Title 33 of the Louisiana Revised Statutes recognizes that portions of the requested material may be nonpublic records and allows the custodian the option to separate that portion from the requested material. See Elliott v. District Attorney of Baton Rouge, 94-1804 (La. App. 1 Cir. 9/14/95), 664 So.2d 122, 125-126. At issue in this case is the exemption that allows for the redaction of proprietary and trade secret information,- The Public Records Act does not define the term “trade secret.” However, Section 1431 (4) of Title 51 of the Louisiana Revised Statutes defines trade secret as:
(4)“Trade secret” means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
(a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by *817 other persons who can obtain economic value from its disclosure or use, and
(b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
As for the Public Records Act, Section 3.2 A of Title 44 of the Louisiana Revised Statutes clarifies that the Act shall not be construed to require the disclosure of: 1) “proprietary or trade secret information pertaining to any code, pattern, formula, design, device, method, or process which is proprietary;” or, 2) “trade secret information which has been submitted to a public body by the developer, owner, or manufacturer of a code, pattern, formula, design, device, method, or process in order to obtain or retain approval of such code, pattern, formula, design, device, method, or process for sale or use in this state.” As with any exemption to the Public Records Act, the trade secret exemption is in derogation of the public’s right to be reasonably informed and must be narrowly interpreted. See Angelo Iafrate, 03-0892, p. 5, 879 So.2d at 254.
B
In this case, the appellants argue that the district judge erred in refusing to conclude that the redacted driver registry information is not an exempted trade secret under the Public Records Act. They contend that the information falls [ 11¾within the scope of the exemption because it comprises a collection of data that derives independent economic value from not being generally known to competitors who can obtain economic value from its disclosure or use, and Rasier has taken efforts that are reasonable under the circumstances to maintain its secrecy.
Our review of the proposed information to be released, which in this case comprises the driver’s name, motor vehicle registration or license plate numbers, and active dates of employment, in connection with the clear language of Section 3.2 A indicates that the district judge did not err in refusing to grant a preliminary injunction on these grounds. Simply put, while the redacted driver registry information might qualify as a trade secret under the definition of La. R.S. 55:1431, it does not' fit within the La. R.S. 44:3.2’s additional restrictions. This is to say, the redacted driver registry information cannot be considered a protected trade secret under the clear language of the Public Records Act because it: 1) does not pertain to a code, pattern, formula, design, device, method, or process; or, 2) was not submitted to the City in order to obtain or retain approval of such code, pattern, formula, design, device, method, or process for sale or use in this state. The redacted information, undoubtedly, holds economic value to Rasier and it has taken steps to insure its secrecy, but Section 3.2’s clear language indicates that the information is subject to disclosure under the Public Records Act because it cannot be considered a code, pattern, formula, design, device, method, or process. The 117district judge, accordingly, did not abuse her discretion when she declined to issue a preliminary injunction on these grounds.
VI
In this Part, we explain why the district judge abused her discretion when she refused to grant the preliminary injunction on privacy grounds.
A
Article I, Section 5 of the Louisiana Constitution expressly prohibits unreasonable invasions of privacy. The right to privacy in Louisiana has been described as the right to be let alone and to be free from unnecessary public scrutiny. See Capital City Press v. East Baton Rouge Parish *818 Metro. Council, 96-1979, p. 8 (La. 7/1/97), 696 So.2d 562, 566. The right to privacy protects varied interests from invasion. See Angelo Iafrate, 03-0892, p. 5, 879 So.2d at 255. Among the interests protected is the individual’s right to be free from unreasonable intrusion into his seclusion, solitude, or private affairs. See Angelo Iafrate, 03-0892, p. 5, 879 So.2d at 255. The right is not absolute; it is qualified by the rights .of others. Id. The right to privacy is also limited by society’s right to be informed about legitimate subjects of public interest. Id.
In ascertaining whether individuals have a reasonable expectation of privacy that is constitutionally protected, a court must determine not only whether the individual has an actual or subjective expectation of privacy, but whether that expectation is also of a type which society at large is prepared to recognize as being reasonable. Local 100, Service Employees’ Int’l Union v. Forrest, 95-19541 (La. App. 1st Cir. 5/10/96), 675 So.2d 1153, 1156. When a request for public records is at issue, the custodian or the individual claiming the privacy right must prove that there is a reasonable expectation of privacy against disclosure of the information to a person entitled to access to the public information. If, and only if, a reasonable expectation of privacy is found, the court must weigh or balance the public records disclosure interest against the privacy interest. Webb v. City of Shreveport, 371 So.2d 316, 319 (La. App. 2nd Cir. 1979). In these circumstances, however, disclosure is warranted only when the public’s right of access is “sufficiently compelling to override” the individual’s right to privacy. Angelo Iafrate, 03-0892, p. 13, 879 So.2d at 260.
B
The appellants argue that Mr. Doe has a protectable right of privacy in his name, his motor vehicle registration or license plate numbers, and active dates of employment, and that the district judge abused her discretion when she refused to shield this information from release. They, accordingly, argue that Mr. Doe, in light of the averments in his verified petition and Mr. Maguire’s affidavit, has a subjective expectation that the requested information will remain private and undisclosed to the public. This expectation, they also contend, is objectively reasonable in light of the City’s TNC regulatory framework. The appellants additionally contend that Mr. Doe’s privacy interests outweigh the public’s interest in disclosure. And, given that the purported information release violates Mr. Doe’s constitutional right to privacy, the appellants argue that they need not establish the ^presence of irreparable harm in this case. See Jurisich, 99-0076, p. 4, 749 So.2d at 599.
Having reviewed the record in light of the applicable law, we conclude that the district judge abused her discretion when she refused to grant the preliminary injunction on the grounds that release of the redacted driver registry information would violate Mr. Doe’s right to privacy under Article I, Section 5 of the Louisiana Constitution. Here, Mr. Doe’s verified petition clearly evinces his subjective expectation of privacy: “As an Uber driver, Mr. [Doe] has always understood, believed, and expected that his personal and confidential information was to be kept in strict confidence and only provided to the City in order for Rasier to comply with the specific City ordinance that provides for and regulates TNCs.” He further states that he “has always understood, believed, and expected that such information was to be kept in strict confidence and not disclosed to the general public unless some specific cause arose that compelled such disclosure.”
*819 Having reviewed the applicable City ordinances respecting TNCs, we conclude that the district judge erred in failing to conclude that Mr. Doe’s expectation of privacy was a reasonable one. Specifically, City Code Section 162-49 legislatively delineates which documents respecting taxicab and TNC drivers are to be made available to the public. With regards to taxicab and other types of regulated for-hire vehicles, Section 162-49 (a) provides: “A record of the issuance of certificates of public necessity and convenience and driver’s permits is to be maintained by the department of public safety and permits to be available to the |anpublic at all times. The record shall include the names and addresses of the certificate holders or per-mittees and the number of certificates or permits.” Thus, Section 162-49 (a) provides clearly that the public is entitled to discover the names of CPNC and driver’s permit holders. Notably, City Code Section 162-49 (b) applies to TNCs yet draws a narrower informational ambit: “A record of the issuance of transportation network company permits is to be maintained by the department of safety and permits to be available to the public at all times. The record shall include the names and addresses of the permittees and the number of transportation network company vehicles associated with each permit.” Therefore, Section 162-49 draws a distinction between the type of information available to the public concerning TNC drivers and other for-hire vehicle drivers.
It is clear from the City’s statutory framework that Rasier is the TNC permit-tee. Rasier, unlike Mr. Doe, is a TNC. See City Code Section 162-1700. In contrast with Mr. Doe, Rasier is obligated by City ordinance to obtain a TNC permit. See City Code Section 162-1701 (“No TNCs shall operate without first having applied for and received a TNC permit in the manner provided in this article.”). Mr. Doe is the driver of a TNC vehicle. See City Code Section 162-1700.[5] His licensure flows from his relationship with Rasier, not from an application submitted to the City. Not surprisingly then, unlike its treatment of holders of City-issued CPNC’s and driver’s permits, the City’s statutory scheme 121 shields Mr. Doe’s personal information from public discovery. See City Code Section 162-49 (b). In this case, Section 162-49 (b) reflects a legislative choice to limit the ambit of potentially releasable information to the names and addresses of TNC permittees and the number of TNC vehicles associated with each permit. The legislative choice evinced by the plain language of Section 162-49(b), therefore, establishes that Mr. Doe had a reasonable expectation of privacy against disclosure of the redacted driver registry information.
Lastly, we hold that the district judge erred when she failed to conclude that Mr. Doe’s privacy interests were outweighed by the public’s right to know his name, vehicle information, and dates of employment. The purpose of the Public Records Act “is to keep.the public reasonably informed about how public bodies conduct their business and how the affairs of government are handled.” Angelo Iafrate, 03-0892, p. 13, 879 So.2d at 260. The information sought to be released touches upon how Rasier, a private entity, conducts its business. The record indicates, however, that Mr. Doe has been, due to a prior release of this information, the recipient of harassing mailings. It does not take *820 a wild leap of logic to infer that Mr. Doe might be subjected to further harassment should the present release of information be allowed. Given the. purely private nature of the information..sought to be released, the past evidence of harassment accompanying prior releases, and the legislative restrictions found within- Section 162-49(b), we conclude that the district judge, erred in failing to conclude that Mr. Doe’s right to |22privacy in the driver’s registry information outweighs any public interest there might be in disclosure of such information.
The district judge, therefore, erred in failing to-conclude that release of the driver’s registry information would result in a violation of Mr. Doe’s constitutionally protected right to privacy; And having determined that the proposed information release violates Mr. Doe’s constitutional right to privacy, we also conclude that Mr. Doe need not establish the presence of irreparable harm in this case. See Jurisich, 99-0076, p. 4, 749 So.2d at 599. The district judge, accordingly, abused her discretion in refusing to grant Mr. Doe’s request for a preliminary injunction.
DECREE
The district court’s July 8, 2016 judgment in favor of Rasier, LLC, and John Doe and against the City of New Orleans is affirmed in part and reversed in part. We reverse that portion of the July 8, 2016 judgment that denied Rasier, LLC, and John Doe’s request for a preliminary injunction enjoining the release of the redacted driver registry information.' Accordingly, Rasier, LLC, and John Doe’s request for a preliminary injunction is granted and the City of New Orleans is enjoined from releasing the redacted driver registry information in connection with the New Orleans Advocate’s February 3, 2016 public records request. We affirm the district court’s July 8, 2016 judgment m all other respects.
AFFIRMED IN PART/REVERSED IN PART

. Retired Judge Marion F. Edwards served as judge pro tempore on this matter through March 31, 2017, and thereafter, as judge ad hoc by order of the Louisiana Supreme Court dated March 28, 2017.

. Subpart (3) of this section concerns limousines and is inapplicable to the present matter.

. Since the consolidation order, Rasier and Mr. Doe have submitted joint pleadings and memoranda. Neither Rasier nor Doe have set out opposing arguments, opting instead to *812 present a united front before the district court and on appeal, We, accordingly, refer to the parties collectively as appellants.

. Our review of the record indicates that the parties attached several exhibits and affidavits to memoranda filed in the district court. However, the record before us lacks a transcript of the preliminary injunction hearing and does not suggest that all of these attached items were introduced into evidence. Rather, the record as transmitted to us contains only three items that have been formally marked as exhibits and placed in exhibit envelopes. Accordingly, we will not consider the other items that are attached to memoranda yet not formally introduced into evidence. See Denoux v. Vessel Mgmt. Servs., Inc., 07-2143, p. 6 (La. 5/21/08), 983 So.2d 84, 88 ("Evidence not properly and officially offered and introduced cannot be considered, even if it is physically placed in the record. Documents attached to memoranda do not constitute evidence and cannot be considered as such on appeal.”)

. A TNC vehicle "means any motor vehicle being used to provide TNC services through a TNC digital network that is: (1) Owned or leased by the TNC driver, or otherwise authorized for use by the TNC driver to provide TNC services, and is not owned or leased by a TNC ...” City Code Section 162-1700.