ROBERT BAKER, JANE BAKER, NICK DIMAGGIO, JR., RAE ANN DIMAGGIO, RUSSELL DIMAGGIO, RICHARD LEBOEUF, KEITH PRIEUR, AND KATHERINE NELSON PRIEUR

VERSUS

MICHAEL CAMERON AND KAREN K. CAMERON

NO. 24-CA-191  C/W
24-CA-448

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 847-955, DIVISION "O"
HONORABLE DANYELLE M. TAYLOR, JUDGE PRESIDING

December 30, 2024

**SUSAN M. CHEHARDY**
**CHIEF JUDGE**

Panel composed of Judges Susan M. Chehardy,
Marc E. Johnson, and Timothy S. Marcel

<u>**AFFIRMED**</u>
  **SMC**
  **MEJ**
  **TSM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Waquin
Deputy, Clerk of Court

COUNSEL FOR DEFENDANT/APPELLANT,
MICHAEL GERALD CAMERON
    Evan J. Bergeron
    Samuel H. Winston
    Jeigh L. Britton-Foil

COUNSEL FOR DEFENDANT/APPELLEE-2ND APPELLANT,
KAREN K. CAMERON
    Evan J. Bergeron
    Samuel H. Winston
    Jeigh L. Britton-Foil

**CHEHARDY, C.J.**

In these consolidated appeals the defendants, Michael and Karen Cameron, seek review of the trial court's judgment granting the plaintiffs-appellees: Nick and Rae Ann DiMaggio, Russell DiMaggio (Nick and Rae Ann's son whose business allegedly was impacted by the actions of Mr. Cameron), Robert and Jane Baker, Richard LeBoeuf, and Keith and Katherine Prieur, the injunctive relief requested in their petition. Finding the trial court improperly granted permanent injunctive relief without the parties agreeing to resolve the merits of the permanent injunction, we amend the judgment to read that it grants "preliminary" injunctive relief. As amended, we affirm the trial court's judgment and remand for further proceedings.

*Facts and Procedural History*

All of the events surrounding this case occurred around the homes of several neighbors living on Melody Drive in Metairie. According to the plaintiffs, Karen Cameron began feeding cats in the neighborhood by leaving food out during the day and night, which allegedly attracted rats and other wildlife to the area. The Camerons also purportedly installed bird feeders and platforms in the tree behind their house, in which they put food for the animals. Dr. LeBoeuf testified that in March 2023, he observed between 50 and 200 rats on his back fence, making their way to the food in the tree behind the Camerons' fence. Mrs. DiMaggio testified that rats ran through her attic and gnawed holes in her dining room and den.

The plaintiffs claim that the rats nested in and around their property, and in some cases ate wiring and caused damage to a vehicle (Dr. and Mrs. Baker), a home security system (Dr. LeBoeuf), a pool heating system (Dr. LeBoeuf), and an air conditioning unit (the DiMaggios). Mrs. Prieur testified that there were rats on her carport and in her shed, although there were no rats in her house. In addition to rats, the food allegedly attracted raccoons, possums, snakes, ducks, and other birds such as hawks, crows, and pigeons. Dr. LeBoeuf asked Mrs. Cameron to stop

feeding the animals many times, and he called the Board of Health, the Levee Board, Animal Control, his council person, and the Parish President to try to get something done about the Camerons feeding the wildlife and to eliminate the rat infestation.

After the authorities had been notified of the problem, the Camerons engaged in conduct in the neighborhood that plaintiffs found harassing, threatening, or otherwise inappropriate. For example, the plaintiffs testified that both Mr. and Mrs. Cameron called them at various times "pedophiles," "idiots," and many other derogatory names. Dr. LeBoeuf claimed that Mr. Cameron screamed at him and threatened his life, telling him that his boys from "up north" were coming down to take care of him. Mrs. Cameron allegedly called Dr. LeBoeuf a "serial killer like Jeffrey Dahmer." The Camerons also falsely claimed that Dr. LeBoeuf killed his own wife. Mr. Cameron told some of the neighbors that he had talked to the DA, the FBI, and the Department of Justice about them.

All of the plaintiffs stated that Mr. Cameron yelled and cursed at them or their neighbors. Mrs. Prieur described Mr. Cameron as "loose cannon" and a "bully." Mr. Cameron also allegedly said that Russell DiMaggio had Down syndrome, and he left unfavorable reviews of the DiMaggios' security business on both Facebook and Google.[1] In one altercation, Mr. Cameron physically pushed Dr. Baker on the ground. Dr. Baker also believed that Mr. Cameron was poisoning his grass and his plants, though Dr. Baker admitted he had no evidence to prove this. Dr. Baker testified that Mr. Cameron was stalking him by coming up to Dr. Baker's back yard, looking in, and taking pictures. The immediate neighbors on each side of the Camerons' house, the DiMaggios and Dr. LeBoeuf, installed security cameras to track the rat population that they would see on the back fence.

---

[1] Hearing testimony established that these reviews were eventually removed from one or both of these online platforms.

The Camerons did not deny feeding the cats and admitted that they have previously been cited for a violation of nuisance laws. Mr. Cameron also admitted that he was cited by the Department of Agriculture for "illegally poisoning," but he denied poisoning Dr. Baker's lawn. Mr. Cameron further denied saying that Dr. LeBoeuf killed his wife or that Dr. LeBoeuf was killing neighborhood cats. However, Mrs. Cameron claims that she was told that Dr. LeBoeuf killed his wife. The Camerons also contended that the neighbors were engaged in video voyeurism and that the security cameras they installed constituted an invasion of privacy. Thus, the Camerons used extremely bright lights to thwart them, and they installed a siren on their back fence as a warning to the neighbors. The Camerons also believe that the neighbors purchased "spy glasses" used to spy on them.

All plaintiffs stated that their quality of life in the neighborhood has substantially declined due to the Camerons' threats and hostility toward them. Dr. Baker testified that some of the women in the neighborhood were now afraid to go outdoors.

The plaintiffs filed a petition seeking to preliminarily and permanently enjoin the Camerons from harassing them, but they did not seek money damages for the damage to their property. The Camerons filed a reconventional demand, also seeking preliminary and permanent injunctive relief, essentially prohibiting plaintiffs from aiming cameras at or conducting other video surveillance of their back yard.

On December 6, 2023, after a two-day hearing, the trial court ruled that the allegations the Camerons asserted against their neighbors were not supported by the videos or any other evidence. The court indicated that the videos instead showed "Mr. Cameron engaging in menacing behavior and spewing insults and profanities from across the street unprovoked." The trial court also did not find the Camerons' explanation of the events at issue credible, stating, for example:

> I watched the video of Mr. Cameron pushing Mr. Baker. Mr. Baker did not – there was no showdown between these two people where Mr. Baker blocked his path and he couldn't get around him or obstructed him from traveling. None of that happened on that video. … [Mr. Cameron] literally turned the corner, walked, and as soon as he got near [Dr. Baker] he shoved him.
>
> ***
>
> Same with the other videos that I saw, what you told me was on those videos are not on those videos. And so it calls into question in my opinion the Camerons['] entire perception of events that they have to relate to the Court.

On January 8, 2024, the trial court signed a written judgment memorializing the ruling from the bench that granted the plaintiffs' requested injunctive relief. In relevant part, the Judgment stated that the Camerons were prohibited:

> from abusing, harassing, stalking, following, tracking, monitoring or threatening [plaintiffs] in any manner whatsoever. This prohibition includes the use, attempt to use, or the threat to use of physical force that are reasonably expected to cause bodily injury.
>
> from contacting or communicating to or about [plaintiffs] personally, through a third party, via public posting, by any means including verbal, written, telephonic, electronic, text, email or social media, without the express written permission of the Court.
>
> from posting on any forum, site or social media, any information, photographs or statements regarding [plaintiffs], their businesses, their family members, their agents and their assigns.
>
> from going onto [plaintiffs'] property, from interfering in any manner with their employment, from damaging any of their belongings or in any way interfering with their living conditions.
>
> from any video or photographic surveillance of [plaintiffs'] property.

The trial court further ordered that the Camerons and their animals:

> must remain more than 50 feet from any residence of [plaintiffs], with the exception of traveling in a closed vehicle to and from their home or when they are actually physically within the boundaries of their own property. … [The

Camerons] are permitted to walk on their own sidewalk, but are
not allowed to use the sidewalk in front of anyone else's home.

The court subsequently clarified that the Camerons were not allowed to use the

public street when walking their dogs if they have to pass by the petitioners'

properties to do so.[2]

On January 12, 2024, acting only on behalf of Mrs. Cameron, defense

counsel filed a motion for new trial and memorandum in support of the motion for

new trial. On March 6, 2024, now acting *pro se*, Michael Cameron filed a Motion

and Order for Devolutive Appeal from the trial court's January 9, 2024 Judgment.

On June 20, 2024, the trial court denied Mrs. Cameron's motion for new trial, and

Mrs. Cameron timely filed a Motion for Appeal from the January 8, 2024 judgment

granting a preliminary and permanent injunction against her and the denial of her

motion for new trial. After the Camerons' separate appeals lodged in this Court, we

consolidated them.

*Discussion*

Mr. Cameron raises three assignments of error on appeal in his brief, and

Mrs. Cameron adopts those assignments of errors in her brief and sets forth one

additional assignment of error. First, the Camerons contend the trial court

improperly issued a *permanent* injunction after holding a summary hearing meant

to address the preliminary injunction only. Second, they argue the district court

improperly issued an injunction against each of them without a showing of

---

[2] Additionally, after finding that the Camerons had a reasonable expectation of privacy in their backyard, the trial court granted the Camerons' request for injunctive relief by enjoining the DiMaggios and Dr. LeBoeuf "from any and all video surveillance or voyeurism" of the Camerons' property. The judgment states that Dr. LeBoeuf and the DiMaggios "shall not install any video device that can be manipulated or positioned to film the Cameron's [sic] backyard." However, the judgment permits the DiMaggios and Dr. LeBoeuf to "put a fixed camera up on their respective property, and they are allowed to continue to video monitor the back of the Cameron's property, the tree and the levee area. The Court finds that there is no expectation of privacy in these public areas." Finally, the trial court prohibited all plaintiffs from "affecting the trees, planting or landscaping on the Cameron's property." The plaintiffs did not file a brief in response to the Camerons' appeal, nor did the DiMaggios or Dr. LeBoeuf appeal, thus, this portion of the trial court's judgment is not considered here.

irreparable harm. Third, they argue that the injunction is "overbroad and out of proportion to the harms it sought to address." Lastly, Mrs. Cameron contends the trial court improperly issued a preliminary and permanent injunction against her with insufficient evidence to show that her actions led to any harm to the neighbors.

We first address the Camerons' contention that the trial court erred in granting a permanent injunction when there was no express agreement between the parties that the hearing on the preliminary injunction would also resolve the requests for a permanent injunction. We agree.

"A preliminary injunction is merely provisional and is tried as a summary proceeding. By contrast, a permanent injunction must be tried as an ordinary proceeding." *Hyman v. Puckett*, 15-930 (La. App. 4 Cir. 5/4/16), 193 So.3d 1184, 1190. A trial court may issue a permanent injunction only after a trial on the merits in which the burden of proof is a preponderance of the evidence. *Richard v. Bourgeois*, 19-494 (La. App. 5 Cir. 3/18/20), 293 So.3d 790, 794 (quoting *Zeringue v. St. James Parish Sch. Bd.*, 13-444 (La. App. 5 Cir. 11/19/13), 130 So.3d 356, 358-59).

In *Richard*, we reversed the judgment granting permanent injunctive relief after finding the trial court improperly had converted the hearing for preliminary injunction to a permanent injunction hearing, noting that the "jurisprudence is clear that a preliminary hearing cannot be converted to a permanent injunction hearing absent a stipulation of the parties to the contrary." *Id.* at 794 (quoting *Elysian Fields Church of Christ v. Dillon*, 08-989 (La. App. 4 Cir. 3/18/09), 7 So.3d 1227, 1232). "Only where the parties have expressly agreed to submit the case for final decision at the hearing on the rule for a preliminary injunction, may the ruling on the preliminary injunction definitively dispose of the merits of the case." *Zachary Mitigation Area, LLC v. Tangipahoa Par. Council*, 16-1675 (La. App. 1 Cir.

9/21/17), 231 So.3d 687, 692; *see also Bally's Louisiana Inc. v. Louisiana Gaming Control Bd.*, 99-2617 (La. App. 1 Cir. 1/31/01), 807 So.2d 257, 263, *writ denied*, 01-510 (La. 1/11/02), 807 So.2d 225 ("The principal demand, as opposed to the preliminary injunction, is determined on its merits only after a full trial under ordinary process, even though the hearing on the summary proceedings to obtain the preliminary injunction may touch upon or decide issues regarding the merits.").

We recognize that the preliminary injunction hearing in this case was continued from its original November 16, 2023 date to December 5, 2023; that the parties engaged in limited discovery, including an exchange of exhibits; and that both plaintiffs and defendants had the opportunity to put on evidence and to testify in support of their respective claims. Nevertheless, because there is nothing in the record to show that the parties made an express agreement to decide the case fully on the merits, and because the Camerons have objected to the granting of permanent injunctive relief after only a preliminary injunction hearing, we modify the January 8, 2024 judgment to the extent it that it grants *permanent* injunctive relief and consider the judgment as having granted *preliminary* injunctive relief.

Next, we address the Camerons' contention that the trial court granted the plaintiffs' requested injunction without making the necessary finding of irreparable harm. To the contrary, a plaintiff is entitled to circumvent the irreparable-harm requirement when the injunction sought is prohibitory, not mandatory, and when the prohibited conduct is unlawful or unconstitutional. *See*, *e.g.*, *Yokum v. Pat O'Brien's Bar, Inc.*, 12-217 (La. App. 4 Cir. 8/15/12), 99 So.3d 74, 81 (finding that a prohibitory injunction preventing defendant from playing excessively loud music did not require a showing of irreparable harm). *See also Delesdernier v. Floyd*, 15-331 (La. App. 5 Cir. 12/23/15), 182 So.3d 1159, 1163 ("Once a petitioner has made a *prima facie* showing that the conduct to be enjoined is reprobated by law,

the petitioner is entitled to injunctive relief without the necessity of showing that no other adequate remedy exists.").

The trial court heard ample testimony from each of the plaintiffs regarding the harassing behavior of both Mr. and Mrs. Cameron. The trial court also determined that the testimony from both Mr. and Mrs. Cameron lacked credibility or otherwise was at odds with the video evidence introduced at the hearing. The court watched video evidence of Mr. Cameron physically encountering Dr. Baker on September 27, 2023, causing him to fall to the ground—a battery under La. R.S. 40:35. Mr. Cameron also allegedly told his dogs to "sic' 'em," meaning to go after Dr. Baker—an assault under La. R.S. 40:36. Several plaintiffs testified that Mr. Cameron repeatedly videoed them when outside of their houses, shouted at them, and called them derogatory names, causing some of the neighbors to refrain from going outside. Under La. R.S. 14:40.2(A), "stalking" is defined as the "intentional and repeated following or harassing of another person that would cause a reasonable person to feel alarmed or to suffer emotional distress." While we make no finding here whether Mr. Cameron is in fact guilty of assault, battery, or stalking, we find the trial court did not abuse its discretion in considering the conduct that plaintiffs described to be illegal, and thus did not err in failing to require proof of "irreparable harm." Given the extensive testimony from the plaintiffs regarding the Camerons' campaign of harassment, false accusations, name calling, and their threatening demeanor, we find no merit in their second assignment of error.

We next consider the merits of the injunctive relief granted in plaintiffs' favor and against the Camerons. Mr. and Mrs. Cameron contend the injunction is "overbroad and out of proportion to the harms it sought to address." Mrs. Cameron additionally argues that the district court's injunction against her is "draconian" because it prevents her from leaving her home unless she is in a vehicle, and

contends there was insufficient evidence offered to show that her actions led to any harm to the neighbors.

A preliminary injunction will not be disturbed on appellate review unless a clear abuse of the trial court's discretion is shown. *Zachary*, 231 So.3d at 691 (citing *Concerned Citizens for Proper Planning, LLC v. Parish of Tangipahoa*, 04-0270 (La. App. 1 Cir. 3/24/05), 906 So.2d 660, 663). Testimony at the hearing established that before the rat problem, some of the neighbors had pleasant encounters with Mr. and Mrs. Cameron. Yet after the neighbors reported the neighborhood rat problem to the authorities, Mr. and Mrs. Cameron changed their tune. The hearing testimony and video evidence provided ample proof that the Camerons, including Mrs. Cameron, harassed the plaintiffs and other neighbors, causing some of the neighbors to not want to exit their homes. Having viewed multiple videos of Mr. Cameron threatening and antagonizing his neighbors, and having heard testimony regarding Mrs. Cameron's acts of name calling and harassment, the trial court determined that the Camerons' explanation of events lacked credibility, and granted plaintiffs' requested injunctive relief. Upon review, we find the Camerons have failed to meet their burden of proving that the trial court abused its discretion. Furthermore, we note that the Camerons may request further modification of the trial court's judgment after a full trial on the merits.

DECREE

The portions of the trial court's January 8, 2024 judgment granting "permanent" injunctive relief in favor of plaintiffs and against defendants, the Camerons, is modified to grant preliminary injunctive relief only. As amended, the judgment of the trial court is affirmed, and the matter is remanded for further proceedings.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **DECEMBER 30, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
**CLERK OF COURT**

# 24-CA-191
### C/W 24-CA-448

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DANYELLE M. TAYLOR (DISTRICT JUDGE)
EVAN J. BERGERON (APPELLANT)          SAMUEL H. WINSTON (APPELLANT)          PIERRE W. MOULEDOUX (APPELLANT)
ROBERT T. GARRITY, JR. (APPELLANT)

**MAILED**
ROBERT AND JANE BAKER  (APPELLEE)
1501 MELODY DRIVE
METAIRIE, LA 70002

RICHARD LEBOUEF  (APPELLEE)
1505 MELODY DRIVE
METAIRIE, LA 70002

MICHAEL GERALD CAMERON
(APPELLANT)
1509 MELODY DRIVE
METAIRIE, LA 70002

KEITH AND KATHERINE PRIUER
(APPELLEE)
1512 MELODY DRIVE
METAIRIE, LA 70002

RAE ANN AND NICK DIMAGGIO
(APPELLEE)
1513 MELODY DRIVE
METAIRIE, LA 70002

RUSSELL DIMAGGIO  (APPELLEE)
310 BROOKS STREET
UNIT C
NEW ORLEANS, LA 70124

JEIGH L. BRITTON-FOIL (APPELLANT)
ATTORNEY AT LAW
8120 OAK STREET
NEW ORLEANS, LA 70118